## Reynolds *et al. versus* Hewett.

In a parol exchange of lands, there must be a delivery of possession, but the evidence in reference to the time of possession will admit of greater latitude than in the case of a parol sale of land.

The evidence as to the contract and exclusive possession afterwards, ought to be clear, precise, and indubitable.

ERROR to the Common Pleas of *Erie county.*

This was an action of ejectment brought by Russell and William Hewett against Mary Reynolds, widow of John Reynolds, deceased, and Sarah, Elizabeth, and Nancy J. Reynolds, minor children of the said John Reynolds, and William Bracken, their guardian, and Horace Goodrich, tenant, to recover sixty-two acres of land in Waterford township.

In 1829 John Reynolds, through whom plaintiffs in error claimed, was the owner of the land in controversy, and Lyman Hewett was the owner of 100 acres in Beaverdam township. In October, 1829, they entered into a parol exchange of these lands, by which Hewett gave to Reynolds the 100 acres in Beaverdam and $100 for the 62½ acres. They went immediately to the Beaverdam tract, when Hewett showed Reynolds the boundary lines and gave him possession. Within a week afterwards they went to Waterford, and Reynolds delivered possession of the tract in dispute to Hewett. Hewett then planted some seeds and put in grafts, and then returned home; and did not go back to Waterford to exercise any acts of ownership until in the fall of 1830, nearly a year afterwards. He went to live upon the land in the fall of 1831: until that time the premises were in the occupancy of Sherwood and George Reynolds, who paid Hewett no rent. Reynolds sold the Beaverdam tract to one John Barney, and received the price therefor. A creditor of Hewett levied on the Beaverdam land on the 9th July, 1831, and pursued his proceedings to a sale of the land under a *ven. ex.* The land was purchased by W. P. Shadduck, who afterwards brought an action of ejectment against Hewett, Reynolds, and Barney. On the trial of that ejectment, the defendants set up the exchange of lands made as *bona fide,* and as a defence against the Hewett title, and obtained a verdict.

The Waterford tract was sold in 1846 by the sheriff of Erie county, as the property of Lyman Hewett to B. B. Vincent, who assigned his deed therefor to the plaintiffs below and defendants in error.

Among others, the defendants submitted the following points at the trial:

3d. There is no difference between the exchange of lands and

[Reynolds v. Hewett.]

a sale: the same certainty is required in the one case as in the other.

4th. If the jury believe from the evidence that John Reynolds in 1846 contracted to sell the land in controversy to Russell and William Hewett, for the sum of $400, to be paid thereafter, while said Russell and William Hewett were in possession of the land, it negatives the contract upon which the plaintiffs seek to recover.

The court (AGNEW, P. J.) answered the 3d point: " As a general principle this is true," and the 4th point:

" The contract referred to in this point, it is stated by the witness, Moses Reynolds, took place in April, 1846, while the sheriff's sale to Vincent, under whom the plaintiffs now claim, was made on the 3d day of February, 1846, and Vincent did not assign to them till February 14, 1848. Charles Skinner, called to corroborate this contract by the acknowledgment of Russell Hewett, says the sheriff's sale was referred to in the conversation. James Moore, also called to corroborate by the acknowledgment of William Hewett, states the conversation as in the spring of 1846. By defendant's own showing, the contract referred to in the point, was made after the sheriff's sale, and before the plaintiffs became invested with Vincent's title, and in view of this fact, we say that what John Reynolds and the plaintiffs said or offered to do, though in the presence of Lyman Hewett, cannot in law affect the title then in Vincent. But so far as this assertion of title by John Reynolds, connecting it with prior conduct on his part, at variance with the existence of the alleged exchange, is a fact or circumstance tending to show a continued line of conduct on his part at variance with it, it may be taken into consideration by the jury in weighing the question of exchange."

The court also charged the jury as follows: " But there are other features in this case which place it upon different ground. It is not a purchase merely, but an exchange, and attended with circumstances of no ordinary character, not only as regarding the proof of contract, but the mutual corresponding possession of the parties respectively, during a long period of time, and the rights of third persons founded upon judicial proceedings and the alleged validity of the exchange. That there was a contract of exchange is proved by such direct as well as corroborative evidence, as to what it was, its precise terms, what lands and how much, and what the consideration and how paid, as to require the evidence to be submitted to the jury for their determination. That Hewett's contract for the purchase of his own tract, the Beaverdam, was rescinded, and Reynolds' substituted by written contract in his own name, and that Reynolds took possession of the Beaverdam land and sold it in 1832 to Barney, receiving its price, and Barney has since held the property, Reynolds thus receiving on his part the fruits of the exchange. That Hewett after taking possession

[Reynolds *v.* Hewett.]

of the Waterford tract, the one in dispute, in September, 1831, continued in exclusive possession down till 1851 or 1852, when he was turned out of possession under the former ejectment. That in the mean time, in 1839, and while Hewett was thus in possession of the land in controversy, an ejectment was brought for the Beaverdam land, against Reynolds and Barney, his assignee; which was defended by them; and in that trial, in 1843, they set up the title acquired under this exchange, alleging it to be a fair contract, investing them with the title of Hewett, and giving evidence to this effect, and therein succeeded against Shadduck the plaintiff and creditor of Hewett, who had levied on the land and sold it for Hewett's debt. All this we say is shown by such evidence as must be submitted to the jury for their consideration, and if believed by them to be clearly, precisely, and indubitably proved, the plaintiffs are entitled to recover. This result is supported by two views of the case, either of which if correct will be sufficient to justify the instruction given.

"In the first place, though it is *not* intended to affect the doctrine that the principles governing a parol exchange differ from those of a sale, or that the former might be supported without a corresponding delivery of possession of each tract, the evidence in a case of exchange, in reference to the time of possession, will admit of greater latitude. Such is the doctrine of Miles *v.* Miles, 8 *W. & Ser.* 135, and it is supported by reason. An exchange from its nature imports transfer of title. It is true this would not support an exchange without delivery of possession of both tracts. But where one party has gone into possession, secured his title by a written substitution, and has by a sale reaped the fruits of his bargain, and in the mean time, while continuing in possession of what he got by the exchange, and suffers the opposite party to take exclusive possession of what he gets by the same exchange, though at a later day, and to continue therein until his estate is seized by creditors and sold at sheriff's sale, it certainly takes away from that necessity of a prompt and immediate possession which would have been required in a mere sale. The equity of second parties thus is greater, and a larger equity moderates the rigour of time, in the delay in taking possession. It is as it were a renewal of the contract by the first party, by continuing its relation and infusing into it fresh vigour, when within a reasonable time the second party takes possession under it.

"In the second place, the position taken by John Reynolds in relation to the exchange in the trial of the case of Shadduck (assigned by sheriff's sale of Hewett, and therefore standing in his shoes as to the title to the Beaverdam place), is such as to afford not only the most clear and indubitable evidence of the contract, but furnishes strong evidence, that the possession of Hewett of the Waterford tract, which had continued exclusively from 1831

[Reynolds v. Hewett.]

till the time of trial (twelve years), was attributable alone to the contract, and therefore had been so held by Hewett and acquiesced in by Reynolds. Without therefore asserting the conclusiveness of this evidence as an estoppel (and we do not however we might), we conceive it operates so as to relieve the case from the want of certainty which otherwise would have rested upon the time and character of the possession, and requires the evidence to be submitted to the jury.

"In conclusion we say, if the jury believe that the contract of exchange is proved, by which Reynolds was to get the Beaverdam farm and $100, and Hewett the Waterford farm—that in pursuance of this contract Reynolds and Hewett went to Colt, the agent, and had Hewett's contract for the Beaverdam farm rescinded, and Reynolds' substituted under a written contract with the agent; that the parties went to the respective farms, to examine the lines and give possession; that Reynolds took possession of the Beaverdam place and continued to hold it till he sold to Barney—that he received its price from Barney—that he and Barney, in the ejectment of Shadduck, the purchaser of Hewett's interest at sheriff's sale, set up the exchange as a defence to the Hewett title, and insisted upon it, obtaining a verdict thereupon; and that in September, 1831, Hewett took exclusive possession of the Waterford tract, in pursuance of the exchange, and continued therein till 1851 or 1852, being in possession at the time of the trial of the Shadduck case in 1843, and before and after, under the exchange; that in March, 1845, after the Shadduck ejectment seems to have been treated as at an end (for no judgment seems to have been entered therein, though the charge was filed in February, 1844, and a fi. fa. for costs issued to January Term, 1845), a levy was made on the Waterford tract for Hewett's debt, the property sold, and purchased by Vincent, whose title is vested in the plaintiffs. We say, if the jury believe these facts, and that the evidence supporting them is direct, clear, precise, and indubitable, the plaintiffs are entitled to recover."

The defendants assigned for error that the court did not give a full and direct affirmative answer to the defendant's third point, the answer to the fourth point, and to that part of the charge cited above.

*Marshall*, for plaintiffs in error.—There is no distinction between a sale and an exchange of the land. The case of Miles v. Miles, 8 *W. & Ser.* 135, relied upon as authority, does not sustain the distinction. As to parol sales of real estate: Woods v. Farmare, 10 *Watts* 195; 7 *Harris* 461.

*Lane* and *Thompson*, for defendants in error.—Distinction

[Reynolds *v.* Hewett.]

between sale and exchange of lands: 8 *W. & Ser.* 135. The parol exchange as set up by Reynolds as a defence in the eject-ment against him, Hewett, and Barney is an estoppel: 3 *Wh.* 419; 17 *Ser. & R.* 364; 1 *Jones* 22; 16 *Ser. & R.* 198; 1 *Barr* 200; 7 *Watts* 163; 2 *Pa. Rep.* 277; 4 *Y.* 35; 5 *Barr* 428.

The opinion of the court was delivered by ˙
LOWRIE, J.—The whole of the instruction to the jury is sum-med up in the concluding paragraph of the charge of the learned judge of the Common Pleas, and it is so well sustained by his preliminary remarks that it needs no argument on our part to justify it.

The contract of 1846, testified to by Moses Reynolds, was evi-dence that the title was then in John Reynolds, but it was no more, and as evidence it was submitted to the jury. It was much outweighed by the other evidence in the cause, which seems fully to sustain the title of Lyman Hewett, under whom the defendants in error claim. We think the case is free from error.

Judgment affirmed.