## Lewis *v.* Baker et al., Appellants.

[Marked to be reported.]

*Ejectment—Equitable defence—Parol partition—Res adjudicata.*

A series of circumstances may make an equitable defence to an action at law, that would not sustain an action or justify a chancellor in finding and specifically enforcing a parol contract in equity.

Where a bill filed for specific performance of a parol partition was dismissed, and the parties relegated to their legal rights, such dismissal is no bar to the setting up of the parol partition as a defence in ejectment for the same land.

The parties having been sent by the decree in equity, into a court of law, have a right there to set up any facts that may make it inequitable for plaintiff to assert his legal title against them.

Argued May 10, 1892. Appeal, No. 260, Jan. T., 1892, by defendants, Frank Baker et al., from judgment of C. P. Union Co., Dec. T., 1888, No. 66, on verdict for plaintiff, Thos. I. Lewis. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Ejectment for undivided half of tract of land.

At the trial, before MAYER, P. J., plaintiff proved a paper title to an undivided half of a tract of 208 acres 95 perches of land in Kelly township, known as the Clingan farm, which had been conveyed to him and his father, John L. Lewis, in 1856 ; his tenant's possession of same for a year after the conveyance, and service of writ of ejectment upon defendants.

Defendants offered to prove that the land in suit was paid for by plaintiff's father, John L. Lewis, in 1856 ; that in 1861 he bought the Kelly farm, adjoining the Clingan farm, and had the deed made to plaintiff as an advancement; that in 1868 a division line was run between the two farms and plaintiff agreed with his father to accept the Kelly farm and a farm in Centre county as his full share in his father's estate, and to release to the other heirs his interest in the Clingan farm and in the rest of the estate ; that he never thereafter claimed any interest in said Clingan farm, but accepted and retained said advancement; that John L. Lewis died in 1869, intestate, leaving five children, all of whom, including plaintiff, met after his death and agreed to stand by the above agreement and family settlement, and for more than twenty years occupied their several

parts of the estate under a mutual parol partition; that plaintiff agreed with his father and afterwards with his father's heirs, that both the Kelly and Clingan farms were part of his father's estate and that his share, which exceeded a fifth of the whole, had been advanced to him as aforesaid; and that plaintiff's sisters, under whom defendants held, had had exclusive possession of the Clingan farm since the parol partition and had improved the same to double its then value; the whole being offered to show that plaintiff had no interest in the Clingan farm, the land in suit.

Plaintiff objected, setting up the statute of frauds, and that the matter offered was res adjudicata. Objection sustained, exception. [1]

Defendants further offered to prove that John L. Lewis treated the Centre county farm, the Kelly and the Clingan farms and all the rest of his property as one estate, and was about to draw a will whereby plaintiff would take the former two, releasing the last, but refrained from so doing upon plaintiff's agreement so to do; offered for the purpose of showing that to permit plaintiff to recover would be a fraud of decedent's rights and those of his heirs with whom plaintiff made the same agreement after his father's death; and that the running of the dividing or partition line by plaintiff and his father in 1868 between the Kelly and the Clingan farms vested title to the latter in the father absolutely. Objected to for the same reasons and rejected. Exception. [3]

Plaintiff offered, in support of objections, record of bill in equity filed in 1883 by the heirs of John L. Lewis against plaintiff, setting up the state of facts covered by defendant's offers of evidence and praying for specific performance by release and conveyance, which bill was dismissed, the master in his report saying that under the evidence a chancellor ought to decline to interfere, but should leave the parties to their legal remedies. Admitted. Exception. [2]

The court below directed a verdict for plaintiff for an undivided half of the lands described in the writ. [4]

*Errors assigned* were (1–3) rulings on evidence and (4) instruction, quoting bills of exception and instruction.

*J. Merrill Linn, Samuel H. Orwig* with him, for appellants.—
The present controversy could not have been adjusted in the
partition proceedings, for plaintiff, as petitioner, claimed owner-
ship of the land now in suit, and it was left out of the parti-
tion proceedings to be settled in an action of ejectment. Nor
was it adjudicated on the bill in equity, the prayer of which
was for specific performance of a parol partition between the
heirs, and which was dismissed because the evidence failed
to show an agreement between the heirs after the death of their
ancestor, and because the agreement was within the statute of
frauds. The question of plaintiff's title was only incidental to
that proceeding.

Plaintiff's objection that defendant's offered evidence was
res adjudicata was in the nature of a plea of former recovery.
A judgment wherein the question at issue is only incidentally
raised cannot be so pleaded: Tams v. Lewis, 42 Pa. 402. To
make a decree dismissing a bill conclusive, the record must be
shown that the matter claimed to be concluded was the very
matter passed upon: Williams v. Row, 62 Pa. 118; and was
raised and determined in the former suit: Sheble v. Strong,
128 Pa. 315.

A parol partition between tenants in common, made by
marking a line of division on the ground, and followed by a
corresponding separate possession is good, notwithstanding the
statute of frauds: Ebert v. Wood, 1 Bin. 216; and vests title:
McKnight v. Bell, 135 Pa. 358–371; Rider v. Maul, 46 Pa.
376; 1 Coke's Inst. § 250, lib. 3, c. 1.

*B. F. Junkin, E. M. Beale* with him, for appellee.—Adverse
possession could not be set up, the father, who was plaintiff's
tenant in common, dying in 1869, and the suit having been
brought in 1888, leaving but nineteen years for the running of
the statute which in fact never began to run.

The parol partitions sought to be set up had been already
tried, decided and disposed of by bills in equity and partition
proceedings. The question was properly decided by the court,
and not left to the jury, which could not deal with the legal
effect of a record.

OPINION BY MR. JUSTICE WILLIAMS, October 3, 1892.

"Potior est conditio defendentis." A series of circumstances

may make an equitable defence to an action at law, that would not sustain an action, or justify a chancellor in finding and specifically enforcing a parol contract in equity.

This appeal is taken from a judgment in ejectment in favor of the plaintiff. The verdict upon which it is entered was rendered under a binding direction from the learned trial judge that the controversy on which the case depended had been already adjudicated by the decree of a court of competent jurisdiction, made between the same parties, so that the subject was res adjudicata. The facts as they appeared on the trial are that the parties are the heirs at law of John L. Lewis, deceased, whose death took place on the twentieth day of May, 1869. Nearly fifteen years after his death the present defendants, who were, and had been since the death of their father, in possession of the Clingan farm, were desirous of perfecting their title to it and filed a bill in equity for that purpose. They set out, and asked the court to execute, a parol contract for the partition of their father's estate under which Thomas S. Lewis was to release his interest, which was apparently an equal undivided one half in the Clingan farm, in consideration, inter alia, of the conveyance to him of a farm known as the Center county farm. The case went to a master who found that the contract proved was made between the defendant and his father in his lifetime, and that the plaintiffs were not parties to it. Upon this question he expresses his conclusion in these words: " In the present case we have an arrangement made between father and son in contemplation of the father's decease. A parol agreement of an executory nature to which the defendant's sisters are not privy and of whose willingness to adopt and ratify it we must resort to inference." Having disposed of their right to relief on this ground he goes on to say, what was not necessary for the purposes of the case, but what was nevertheless true, that if the parties had shown a contract made with themselves instead of with their father it would have been bad under the statute of frauds. In view of all the circumstances, he reached and reported the following conclusion for the consideration of the chancellor: " Under all the circumstances of the case . . . . a chancellor ought to decline to interfere, but leave the parties to their legal remedies." The report

of the master was concurred in by the court and a decree made in accordance with his recommendations.

If now we assume that the question raised by this action at law is one of those actually presented upon hearing of the bill in equity, we should not overlook the fact that the decree was not intended to conclude the parties in, but to remit them to a court of law. The recommendation of the master adopted and acted on by the chancellor, advised that he "ought to decline to interfere, but leave the parties to their legal remedies." Upon the facts disclosed by the bill it was apparent that the plaintiffs claimed no part of the land in the actual possession of Thomas S. Lewis. They conceded his right, under the arrangement they set out, to hold that which was in his possession. What they asked was a release of his apparent title to one half of the Clingan farm of which they had exclusive possession, and which they alleged they should have a complete title to as their part of their father's real estate. When the chancellor remitted them to a court of law he meant necessarily that upon the facts disclosed by them they must wait till their possession was attacked, if it ever should be, and then set up all the facts by way of an equitable defence to such action. This they have done. After twenty years of exclusive and peaceable possession, their right, to an equal undivided one half, is at the last moment challenged by their brother in an action of ejectment. They are now in a court of law where the decree in equity sent them. They have a right to set up any facts that make it inequitable for their brother to assert his legal title against them. They offer to do so. Their offer is rejected not because the facts set out in it were not relevant and competent, but because they have been passed upon and disposed of by the decree in equity. If any other decree was made than that recommended by the master it does not appear upon the paper books nor is it suggested in the argument for the appellee. The decree we have before us does not justify the ruling of the court below, but expressly declines to interfere, or determine the value of the facts presented, for any other purpose than that of declaring and enforcing a parol contract of partition between the parties to the bill. For that purpose they were held insufficient. For other purposes their value was left to be fixed by a court of law. When the offer was

made, the rejection of which forms the ground of the third assignment of error, the parties were in the tribunal to which they had been remitted; an action at law was on trial in which the plaintiffs in equity were called on to defend their possession of the Clingan farm; the very facts which the chancellor had in effect declared should be submitted as a defence in such action were embodied in the offer; and we are clearly of opinion the offer should have been received, and the value of the facts for the purpose of an equitable estoppel determined by the court and jury. The third assignment of error is sustained.

So much of the second assignment as relates to the offer of the record and decree in equity on the bill for specific execution is also sustained.

The judgment is reversed and a venire facias de novo awarded.