## Thos. S. Lewis *v.* Frank Baker et al., Appellants.

[Marked to be reported.]

*Title by estoppel—Evidence—Ejectment.*

In an action of ejectment it appeared that, in 1856, plaintiff's father bought a farm, and took the title to himself and plaintiff as tenants in common. In 1861, he bought an adjoining farm, and caused the deed to be made to plaintiff. The division was adjusted between the two farms, and plaintiff took possession of the latter farm with its modified boundaries, and the father retained possession of the first farm. In 1869, when the father was ill, he proposed to make a will by which plaintiff should retain the second farm, and release his title to the first farm to his sisters. Plaintiff acquiesced in this arrangement, but persuaded his father that a will was not necessary to carry it out. The father died without leaving a will, and plaintiff's sisters remained in possession of the first farm and made valuable improvements upon it. At various times down to 1888, plaintiff expressed himself as willing to execute a release, but never did so. Sometime prior to 1888, plaintiff had acquired title by adverse possession to land in another county owned by his father. In 1888, he brought ejectment to recover the land in the possession of his sisters, or their representatives. *Held*, that plaintiff was estopped from asserting any title to the land in controversy.

*Evidence—Hostile witness.*

A party cannot ordinarily be bound by the unlooked-for statements of a witness who shows himself to be hostile to the party calling him.

Argued May 7, 1894. Appeal, No. 169, July T., 1893, by defendants, from judgment of C. P. Union Co., Dec. T., 1888, No. 66, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Ejectment against tenants in possession for undivided one half of tract of land in Kelly township, known as the " Clingan Farm." Before McClure, P. J.

The evidence on behalf of defendant was summed up in the third assignment of error as follows:

" That John L. Lewis died on May 20, 1869, leaving to survive him, five children: Thomas S. Lewis, the plaintiff; and Mrs. Rebecca Lamb, Mrs. Deborah Harris, Miss Sarah J. Lewis, Mrs. Martha E. Zeigler, his daughters, the defendants.

" That about the year 1841, John L. Lewis, the father, purchased a tract of land in Centre county, of about 600 acres, and moving to that place, at that early date, being then a man of over 60 years of age, proceeded to make provision for his family. He had at that time another son, named Reese. He divided the land into three parts—one end of 150 acres for Thomas, the other end for Reese of 150 acres, the center portion for himself and daughters. Houses and barns were erected on the premises, the whole family working together, the means coming from the father. Both Reese and Thomas were unmarried. The enjoyment of the one part was given to Thomas, although no deed was executed to him or to Reese, the father remarking that they would get them in time. Reese died unmarried and without issue. John L. Lewis sold Reese's part and the central part, realizing about the sum of $12,000 to $15,000, and as there were about 20 acres adjoining Thomas, which the purchaser did not want, it was thrown over into Thomas's farm, making it about 173 acres, 30 perches, and is known in this proceeding as the ' Centre county farm.'

" In 1855 he purchased what is known as the Homestead, at Lewisburg, and removed there.

" In 1855 he purchased what is known as the Clingan farm, (the undivided half of which is the subject of this action), for $2,565.29, paid for it, and in pursuance of his plan of settlement, had the deed made to himself and Thomas, as tenants in common.

" In 1858 he purchased a property known as the Boarding House, taking title in himself.

" In Nov., 1860, he purchased the Kelly farm for $6,596, paying for it himself, except a dower remaining in the land of $1,800, that is $4,596, taking title in Thomas S. Lewis.

" The Kelly and the Clingan adjoined. Possession was given of the Kelly in the spring of 1861. John L. Lewis and Thomas made an amicable straightening of lines between the two places, by which part of the Kelly was thrown into the Clingan and part of the Clingan into the Kelly. Thomas, in the spring of 1861, moved all his farming property over to the Kelly and farmed it himself one year, and then George Kling came in as his tenant of the Kelly farm, remaining there until 1866.

" Bechor, who was tenant of the Clingan farm from 1858 until 1875, made the new division fences on the Clingan part, and the tenant of the Kelly farm made the fences on the Kelly part. Thomas told him (Bechor) that the part on that side belonged to the Clingan farm and on the other side was his own, and that he had nothing further to do with the Clingan farm. George Kling, Thomas's tenant on the Kelly, says he ploughed up the old fence rows in the spring of 1862.

" In 1862 a deed was drawn by William Jones, Esq., at the instance of Thomas and John L. Lewis, from John L. to Thomas, for the Centre county farm, 173 acres and 30 perches, for the consideration of $8.00 per acre, which, however, was never executed. The lands adjoining were sold at $50.00 per acre.

" In June, 1868, John L. Lewis, now about 90 years old, and Thomas procured a surveyor to go upon the premises and make a draft of the premises, as they had been changed. The surveyor states that the original lines were not marked on the ground, and he found the fences as they were changed.

" In 1863, John L. Lewis purchased the Harmon tract, 13 acres and 30 perches, lying between the two places, and from that time the old lines between the two places were entirely obliterated. About a month before the death of John L. Lewis, the Hon. Chas. S. Wolfe was sent for to draw up his will. The disposition of the property was stated—that the Centre county farm and the Kelly farm should be in full of Thomas's share in his father's estate, and that Thomas should release to his sisters his undivided half in the Clingan farm and all his interest in the personal estate of his father. It was late at night and Mr. Wolfe was requested to return in the morning to write the will. That same night, after Mr. Wolfe had gone,

Thomas opposing the making of the will, promised his father that if no will was made, he would accept the Centre county farm and the Kelly farm in full of his share of his father's estate and would release to the sisters his undivided half of the Clingan farm and the whole of his interest in the personal estate of his father. When Mr. Wolfe returned the next day to write the will, he was informed that his services were not needed, that it was all arranged.

" After the death of the father, the children all met, Thomas with them, and it was agreed that they should all live together as they had been for a year. Thomas and Zeigler took out letters of administration on the estate of John L. Lewis.

" From the time of the severance by the changing of the fences in 1862 and 1863, the rents, issues and profits of the Clingan farm were taken exclusively by the father John L. Lewis. Thomas, as administrator of his father, returned in the inventory the whole of the last year's crops of the Clingan farm as the property of the decedent, his father.

" At the end of the year from their father's death, the heirs all met again, and it was agreed that they should abide by the arrangement of their father : That Mrs. Lamb should have the Milesburg lot, Mrs. Harris should go to the Boarding House lot ; Miss Lewis and Mrs. Zeigler should remain in the Homestead, what was called the Stewart note was given to Miss Sarah J. Lewis ; the income of the Clingan farm and the bank stock to be divided among them all except Thomas. So it was done for a period of fifteen years, without dissent or challenge. The Clingan farm was very poor, and for many years there was large outlay upon it, with little or no income. Fences were built, buildings repaired, wells dug, lands limed and cultivated, all at the expense of the sisters, until at the time of the trial the farm was from one half to one third greater in value.

" Mrs. Harris went to the Boarding House lot and Thomas, then unmarried, went with her. Her furniture and rooms remained there until Thomas left. He married in 1872.

" In 1884 a purchaser came to buy the Boarding House lot, and the title was found in this condition. Thomas stated that that was the arrangement with his father and he was willing to stand by it. Accordingly deeds were drawn and executed

by the sisters for the Centre county farm,—the Kelly farm was already in his name: and deeds were drawn for his interest in all the rest of the property, real and personal, including this undivided half of the Clingan farm. He took them, examined them, said they were all right. But his wife refused to sign them. He then said that he was willing to sign the deed himself, or join in any other proceeding by which it could have been accomplished.

" A bill in equity was formulated by his own suggestion. But he filed an answer notwithstanding.

" His own title to the Centre county farm ripened into a good title by the statute of limitations, if his bad faith avails. On the 20th of November, 1888, when his alleged title to the Clingan farm would be endangered by the statute, he brought this suit.

" For twenty years and upward he enjoyed the fruits of the arrangement; on his part the title to the Centre county farm ripened; he permitted the defendants to expend money upon the Clingan farm, upon the opinion that it was their own, which opinion was created by his own statement, declarations and silence when money was expended. He never made any claim to the rents, issues and profits of his undivided half of the Clingan farm. He disclaimed ownership all the while.

" Proceedings in partition forced on the sisters showed that he had been advanced in a sum of $300 [$3,000 ?] over and above his share in the real estate of his father. The evidence showed that he got one half of his father's estate.

" The original line between the Kelly farm and the Clingan farm was changed and obliterated in 1862 and 1863, and the occasion of the survey in 1868 was the construction of a farm for his grandson, Dr. Zeigler, by cutting 38 acres out of the Clingan farm and adding it to the Bickel farm."

Defendant's witness, Levi Bechor, testified that plaintiff was in possession of the tract in dispute the same after his father's death as before, until 1875, receiving part of the crops, cutting wood, etc.

Plaintiff, in rebuttal, to show inconsistent claims, offered record in a bill in equity, filed Nov. 24, 1883, by defendants against plaintiff to compel specific performance of contract by plaintiff with decedent to renounce interest in his father's estate,

real and personal, and to convey his title to the one undivided half of the land in dispute, called the Clingan farm, for the Kelly and the Centre county farms, averring that plaintiff and his sisters, after the death of their father, made a parol partition of the lands of the father by which the title of the land in dispute was vested in them. A master found that the contract was within the statute of frauds and therefore void, and that the heirs did not make parol partition, but that the possession continued as before. Bill dismissed. Affirmed, per curiam, in No 235, Jan. T, 1885, unreported.

Plaintiff also offered partition proceedings in the orphans' court of Union county instituted by Thos. S. Lewis for the partition of the realty of John L. Lewis, deceased. This included the undivided moiety of the Clingan farm, but not the Kelly farm or the Centre county farm. Petitioner's sisters, defendants here, excepted that the whole of the Clingan farm and the Kelly and Centre county farms should be included in the proceedings. Also that the petition should set out that the petitioner had been advanced out of the real estate. The court overruled the exceptions and ordered that the partition be proceeded with. Affirmed, per curiam, No. 69, July T., 1886, in Lewis's Ap., 10 Atl. R. 135.

Plaintiff further gave in evidence the report of an auditor in the partition proceedings to ascertain whether there was any owelty due Thomas S. Lewis after advancements were charged. It was contended by the sisters, the defendants here, that he was advanced the amount paid for the undivided half of the Clingan farm. This the auditor refused to find but found that he was advanced $3000 in the Kelly farm. Affirmed, per curiam, in Lewis's Ap., 127 Pa. 127.

The court charged in part as follows :

" [The defendants contend that they have shown such number of facts bearing upon the conduct of Thomas S. Lewis and John L. Lewis as to bar the plaintiff from recovering in this action, that is, that he is estopped and precluded by his acts from recovering on his paper title. It is not necessary for me to recite all these facts, they have been presented to you, and I rule now as a matter of law that they are not sufficient to prevent the plaintiff from recovering.] [1]

" We instruct you to render a verdict for the plaintiff for the lands described in the writ."

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1) portion of charge in brackets, quoting it; (2) in giving binding instructions for plaintiff; (3) in refusing to submit the evidence of the defendants to the jury, as an equitable estoppel, to prohibit the plaintiff from asserting his legal title against the defendants, quoting the evidence as within quotations above.

*J. M. Linn*, *P. B. Linn* and *Samuel H. Orwig* with him, for appellant.—In all cases where an act is done, or a statement made by a party, the truth or efficacy of which it would be a fraud on his part to controvert or impair, the character of an estoppel shall be given to what would otherwise be mere matter of evidence: Com. v. Moltz, 10 Pa. 530; Sergeant's Exrs. v. Ewing, 30 Pa. 81; Hill v. Epley, 31 Pa. 334; Pancake v. Cauffman, 114 Pa. 113 ; Woods v. Wilson, 37 Pa. 384; Dolph v. Hand, 27 Atl. 116 ; Folk v. Beidelman, 6 Watts, 343 ; Hamilton v. Hamilton, 4 Pa. 193 ; Swain v. Seamens, 9 Wal. 254 ; Bidwell v. Pittsburg, 5 W. N. 41 ; Logan v. Gardner, 20 Atl. R. 626 ; Van Rensselaer v. Kearney, 11 How. 326.

The court should declare what the elements of estoppel are, and if they are present the conclusion will follow as matter of law: Lewis v. Carstairs, 6 Whart. 207; 2 Sm. L. Cas., ed. 1866, pp. 757, 762; Robinson v. Justice, 2 P. & W. 19.

One who looks on and suffers another to purchase or expend money on land under an erroneous opinion of title, without making known his claim, shall not be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel: Wendell v. Van Rensselaer, 1 Johns. Ch. 354; Coal Co. v. Quick, 61 Pa. 341; Badger v. Badger, 2 Wall. 94; Caulk v. Pace, 3 C. C. A. 631.

*J. C. Bucher*, *E. M. Beale* with him, for appellee.—Estoppel takes place where the conduct of a party has been such as to induce action by another ; he shall then be precluded from afterwards asserting, to the prejudice of that other, the contrary of

that of which his conduct has induced belief : Sergeant's Exrs. v. Ewing, 30 Pa. 81.   Thomas S. Lewis did nothing to mislead the other heirs, his sisters.

As to any arrangement, made between Thomas S. Lewis and his co-heirs after the death of their father, it was, if made at all, by parol, and not executed, even by possession taken in pursuance thereof, nor deed executed in accordance therewith, but on the contrary Thomas S. Lewis continued to exercise dominion over the Clingan farm up to 1875.

OPINION BY MR. JUSTICE WILLIAMS, July 11, 1894 :

This action was brought in 1888 to recover the equal undivided one half of the tract of land known as the Clingan farm. The plaintiff holds the legal title to the one half as tenant in common with his father under a deed made to them in 1856. The defendants set up a variety of circumstances, including a family settlement made in the presence of John L. Lewis, the father, during his last sickness in 1869, as an equitable defence to the action.   The case was first tried in 1891 and a verdict was rendered in favor of the plaintiff under the directions of the learned trial judge.   The reason for this instruction was the conclusion of the learned judge that the facts relied on as constituting a defence had been considered and finally disposed of adversely to the defendants in a proceeding in equity to compel specific execution.   The judgment entered on the verdict was brought into this court by appeal and was reversed, and a venire facias de novo awarded : Lewis v. Baker, 151 Pa. 529.   A new trial has taken place, and a verdict has again been rendered in favor of the plaintiff under a binding instruction from the learned trial judge that the facts set up by the defendants were not sufficient " as a matter of law to prevent the plaintiff from recovering."

The single question raised by this appeal is whether the testimony should have been allowed to go to the jury.   Looking over it as it appears in the paper-books we learn that this farm was bought by John L. Lewis, the father, in 1856, and paid for by him.   The deed was made at his direction to himself and his son Thomas as tenants in common, and probably with a view to the final division of his property among his children. In 1861 he bought an adjoining farm known as the Kelly farm,

and caused the deed to be made to Thomas, who immediately took possession of it and has remained in possession ever since. Ten years later he bought a small lot known as the Harmon lot, which adjoined both the others, and had the deed made to himself. The division line between the Kelly and Clingan farms was then readjusted in such manner as to incorporate the Harmon lot into the two farms, and equalize to some extent their relative values. The fences were then moved from their former location and rebuilt on the new division line. The son continued in possession of the Kelly farm in conformity with its modified boundaries, and the father retained possession of the Clingan. This state of things continued until 1869, when John L. Lewis, then about ninety years old, was taken sick, and turned his attention to the division of his estate among his children. He sent for his legal adviser and laid before him the plan he had determined on for dividing his property, in order that he might prepare a will that should give effect to his wishes. Part of the plan was that Thomas should have the Kelly farm, which he had already had conveyed to him, and should release his title to the Clingan farm to his sisters. Thomas and some other members of the family appear to have been present at this interview between the father and his counsel, and to have expressed themselves satisfied with the proposed division, and willing to carry it into execution. Before the return of the counsel on the following day to complete the will Thomas had satisfied his father that a will was not necessary because he would carry out the plan proposed without the trouble of making and providing a will for that purpose. Resting on this assurance the father dismissed his counsel and died without making a formal will. After his death Thomas remained in possession of the Kelly farm as his own. The rest of the family, or some of them, remained on the Clingan farm, and have built and made other improvements upon it which have added, according to the testimony, about fifty per cent to its value. Thomas did not interfere with them in any manner, but down to 1888 expressed himself as ready and willing to release to them his title to their farm ; and a deed was prepared for that purpose which he said he was ready to execute, but that his wife refused to join him in so doing. In that year this action was brought. This was

thirty-two years after the purchase of the Clingan farm and the taking of possession by the father. It was twenty-seven years after the purchase of the Kelly farm and the delivery of the possession thereof to Thomas. It was twenty-five years after the absorption of the Harmon lot and the readjustment of the division line between the farms. It was nineteen years after the death of the father and the well established arrangement between him and his son for the settlement of his estate and the release by the latter of his title to the undivided half of the farm that was to go in the division to his sisters. These powerfully persuasive circumstances, with many other collateral and corroborative ones, are grouped in the third assignment, and it is alleged that it was error to withdraw them from the jury by a binding instruction that they were "not sufficient as matter of law to prevent the plaintiff from recovering." We think the point is well taken. If these circumstances were established to the satisfaction of the jury, by credible testimony, they made a complete answer to the plaintiff's legal title both "as a matter of law," and as a matter of morals. The plaintiff lay by until his title to the Centre county farm had ripened under the statute of limitations; until the defendants, under the belief, resting on the father's wishes and the brother's promise both to his father and to them, that he would release to them, had expended considerable sums of money in improvements on the farm set apart to them; and then, in the face of these circumstances and his own clearly proved agreement, he attempts to assert a naked legal title against his sisters. Here are all the elements of an estoppel. Here is a gain to himself by his delay, in the ripening of the title to the Centre county farm; a loss to his sisters in valuable improvements made by them, which he now proposes to appropriate to himself; the repudiation of a solemn agreement, repeatedly acknowledged, upon their faith in which the improvements have been made by his sisters; the lapse of many years, with a full knowledge of all the circumstances, until values and circumstances have changed, until witnesses have died or grown old, and proof of the facts has been rendered difficult. To permit the plaintiff to unsay all that he has said for the last nineteen years, upon which his father and his sisters have rested their action, would be a clear fraud upon

the owners of the Clingan farm which equity will not permit: Hill v. Epley, 31 Pa. 334; Pancake v. Cauffman, 114 Pa. 113. The plaintiff's course of conduct for nineteen years was not merely an encouragement, it was practically an assurance,. that they might make improvements with safety because the land was theirs and he would do what was necessary to complete their title in law.   He should now be held to be a trustee of the legal title for their use, so far as to prevent a recovery by him against those whom he has misled: Hamilton v. Hamilton, 4 Pa. 193–6.

The testimony of Levi Bechor did not justify the withdrawal of this case from the jury.   His testimony was not conclusive upon the defendants, certainly not as to the questions upon which there was other testimony.   His credibility was for the jury, and a party cannot ordinarily be bound by the unlooked-for statements of a witness who shows himself to be hostile to the party calling him.

The judgment is reversed upon the first, second, and third assignments of error.