## Moss *et al. versus* Culver.

1. Culver lived in a house on 50 acres of land belonging to his father-in-law, Moss, and farmed the land as tenant at will. They agreed by parol to exchange this tract for 140 acres belonging to Culver. Moss took exclusive possession of the 140 acres, and sold portions to other persons. Culver, after the exchange, continued in exclusive possession of the 50-acre tract for nineteen years, improved it with the knowledge of Moss, and paid taxes; no rent was demanded or paid. *Held*, to be evidence of such execution of the exchange as to take it out of the Statute of Frauds.

2. There is no difference between a parol sale and exchange of lands as to the requisites to take them out of the Statute of Frauds.

3. There is a difference between sale and exchange as to the *evidence* to establish possession; an exchange has subjects on both sides which stand related to each other, and if the evidence shows a clear, unequivocal and complete taking possession of one of the subjects, it strengthens the evidence of a possession taken by the opposite party of the corresponding subject.

4. In case of a parol sale to a tenant, an express surrender of the tenancy and resumption of possession under the contract, is sufficient.

5. Miles *v.* Miles, 8 W. & S. 135, Reynolds *v.* Hewitt, 3 Casey 176, recognised.

March 15th 1870. Before Thompson, C. J., Agnew and Sharswood, JJ. Read, J., at Nisi Prius.

Error to the Court of Common Pleas of *Luzerne county:* No. 322, to January Term 1870.

This was an action of ejectment for 50 acres of land brought, December 7th 1867, by Benjamin Moss against Wesley Culver. The plaintiff having died pending the suit, Daniel Moss and others, his heirs and devisees, were substituted as plaintiffs.

[Moss *v.* Culver.]

The legal title to the premises was in the plaintiffs. The defendant claimed under a parol exchange between himself and Benjamin Moss.

The case was tried January 11th 1870, before Dana, J. The plaintiffs gave in evidence a deed, dated October 31st 1831, from Isaac Smith to Benjamin Moss; also the will of Benjamin Moss, giving legacies out of the proceeds of sale of the premises in dispute, to the plaintiffs in this suit. The plaintiffs then rested.

The defendant gave evidence that he went into possession of the premises in 1847. He also gave in evidence a contract, dated February 1st 1841, between Benjamin Moss and Joel Culver and Wesley Culver for 241 acres of land for the consideration of $420, of which $25 was to be paid down, and $100 on each succeeding 1st of December till paid; a general warranty deed to be given to the vendees on the second payment. Endorsed on the article, were receipts from February 1st 1841 to August 24th 1845. The receipt on the last day was—" $50. Yoke of oxen, $80 cash." Also an endorsement, " 5th November 1855. Received satisfaction in full of the within article."

Joel Culver testified that he and the defendant went into possession of this land immediately after the contract; witness took possession of 100 acres and the defendant of 140. About 1846, the defendant married Fanny, a daughter of Benjamin Moss; after his marriage defendant went into possession of the 50 acres in dispute, which was about a quarter of a mile from Benjamin Moss's residence; Benjamin Moss told defendant to move into the house; there were a house and barn on the 50 acres; " sometime in the fall of 1848 Benjamin Moss sent for me, went over in the afternoon; I asked him what he wanted; he said he had been trying to make a trade with Wesley Culver for the lot of land where he lives for the 140 acres of woodland;" he said he had certain reasons; one was that Wesley wanted to move upon the 140 acres, and because his wife was addicted to having fits, that she would be away from under his eye, and Wesley would be away sometimes, and he (Moss) could not look to her in Wesley's absence. He said the reason I sent for you is, I have been trying to get a trade with him and cannot get him to agree to it. He said I want you to go down and try to prevail on him to trade this 50 acres for the 140 acres. * * * He said I want you to go down and offer him that lot where he lives even up for the 140 acres, tell him I will make him a general warranty deed for it in lieu of that I was to make for the 140 acres. I went down and found Wesley and his wife at home; I said I understand that you and the old man Moss have been talking about trading; yes, he said, we have; I said, Wesley, how does Moss want to trade? Wesley said he wanted to trade him this where he now lives for the 140 acres up yonder. * * * I said, I think you had best trade, you will

do better. He said if you think it is best, you may tell old Moss I will trade. * * * I came to Moss's house; he said, What success? I said, If you will go right down you can get a trade; I told him that Wesley said he would trade; he said I will trade with him then before I sleep. * * * I met Benjamin Moss in the road; he said I made that trade last night; I said how did you trade? he said just as you proposed yesterday; he said I got the sleigh; you know there was $18 due on the land from Wesley; he said I want you to turn right about with me and go up there; we proceeded together up there; we met Wesley out at his barn; I said to Wesley, It appears that you and the old man have traded? Wesley said, We have; the old man said I want you to remain here just as you are living now. * * * Benjamin Moss said, Now, Joel, I will give him a general warranty deed for this. I am going down to Koons to-morrow, he generally keeps blanks, if I get them I want you to fill up four titles; I want you to fill up one for Almon Wilkinson and his wife for 80 acres of Wesley's land up there; I want you to fill out one for John Holmes for that where he lives; I want you to fill out one for yourself, for your part of the 240 acres, and one to Wesley for the 52 or 53 acres where he lives; I met him the next day; he told me he didn't get them, for Koons hadn't any; he said I want you when you go to Wilkesbarre to get those blanks; about one month, or two or three, I told him I was going to Wilkesbarre and I could get the blanks: he said, Get them and I will pay for them; I got three blanks, I did not get four because the printer did not have them; I went back. It was rather neglected, and the deeds were not made out for some weeks or months. Now, he said, I want you to go on and fill up those titles; he said, I want them made out in my lifetime; he said, You or Wilkinson or Holmes or Wesley will have to wait; he said, I will go and get Wesley to wait, and if he won't, you will have to wait; he sent me word that Wesley would wait; I went at it and filled up the deeds for John Wilkinson and wife, John Holmes and myself; he said I should get Squire Crocket and send him word and he would acknowledge them; I did so, and Moss acknowledged them; the one to Wilkinson was for 80 acres of Wesley's 140 acres. At the time he made the deeds he told me the reason he wanted to make the trade with Wesley; that he wanted to give Wilkinson 80 acres, Rood 35 acres, and Jefferson Arnold 35 acres of Wesley's 140 acres; Wesley has been in possession of the 50 acres from the time of the trade up to this time; he had paid the full purchase-money and interest; he has put in repair the fences, set out fruit, grafted and done the ordinary work; he has lived on it just as a man would live on his own farm; he has made stone wall, quite considerable; he has cleared some of it and has farmed it, and cleared it and used it as men ordinarily do, and lives there now;

[Moss *v.* Culver.]

Wesley never had anything to do with the 140 acres after the trade; Benjamin Moss took possession and sold it; he made the deeds in February 1849 to me and Wilkinson and wife; it ran along about eight or ten years; Benjamin Moss and Wesley got in a little difficulty in the church; after this Benjamin Moss made a deed to Wesley for this land. * * * The objections that Wesley made to the deed that Moss made, was that about three acres of land was left out. The title Wesley said was good enough, but it did not embrace all the land. The charge in the church trial was that Benjamin would not make a deed to Wesley; Moss said he would make him a deed after the trial."

Defendant gave in evidence assessments from 1849 to 1868, showing that the land in controversy was assessed to him.

John Blanchard testified: "I was called upon by Benjamin Moss twelve or thirteen years ago to take the acknowledgment of a deed to Wesley Culver; I took the acknowledgment; it is for the land Wesley lives on; after I took the acknowledgment Moss gave me the deed and requested me to see him and give it to him; I took it; I handed him the deed and told him what it was; he looked it over and read it; he said it did not cover all the land he claimed; upon those grounds he would not take the deed; he said it failed to cover several acres; I gave the deed back to Mr. Moss."

The defendant then gave in evidence the deed, dated January 7th 1854, for the land in dispute, "50 acres strict measure," consideration $1000.

The defendant then gave evidence by a number of other witnesses of declarations by Benjamin Moss, that defendant owned the land in dispute; that he had "traded" him (Moss) another piece of land for it. He also gave evidence of his possession for eighteen or twenty years; of improvements made by him. There was evidence also that Moss and his son and defendant worked together on the farm in and prior to 1848, and in that year Moss declared defendant was going to work it after that. The defendant's wife died in 1856.

On the part of the plaintiffs, in rebuttal, Lucy Wilkinson, one of them, and a daughter of Benjamin Moss, testified that in 1848 Moss said to defendant: "I have been thinking if you are willing, I will take back the 140 acres and let you have and stay on this where you are as a tenant; some day it will fall to you or my daughter as an heirship; but he said, I can't pay you back the money that you have paid me on that other which was about $140, but I will tell you what I will do; I have got two yoke of cattle in the yard, you may take your pick of the two yoke for $100, and the rest I will pay you, and let you have a plough and a harrow besides; Wesley said it would be very good for him, that it would save him from hunting around to get a team; Wesley had been

14 P. F. Smith—27

[Moss *v.* Culver.]

living on the place very near a year; Wesley got the plough and harrow and oxen; I never heard anything about a trade; I have heard Culver say he was satisfied; that my father had paid him back all he had paid him on the contract."

Daniel Moss, another of the plaintiffs, testified in a similar manner. They gave other evidence also in rebuttal.

The plaintiffs requested the court to direct the jury to render a verdict in favor of the plaintiffs.

I. Because they have shown an undisputed legal title to the land—not affected by the alleged parol sale or exchange of the same between B. Moss and the defendant.

II. The defendant has not proved such a parol sale or exchange to him as will except his case out of the operation of the Statute of Frauds and Perjuries.

1. Because he has not shown by clear, direct, and positive testimony that a sale or exchange ever was agreed upon by him and B. Moss face to face—nor has he shown by clear, direct, and positive testimony what the consideration was, nor that he ever paid it.

2. Because he has not proved that he has made such permanent valuable improvements upon the land in dispute as that he cannot be compensated in damages.

3. Because he was a tenant under B. Moss in possession of the the land in dispute at the time of the alleged parol sale or exchange of the same to him, and therefore could not and did not take such an open and notorious transfer of the possession of the same as the law requires.

The defendant requested the court to charge the jury—

1. That courts recognise a distinction between a parol *exchange* and a parol *sale* of lands; and that, while the former cannot be supported without a delivery of possession of both tracts in accordance with the contract, yet an *exchange* from its nature imports transfer of title, and the evidence to support it covers a wider latitude than would be admissible in a mere parol sale of lands.

2. That it is not essential to the efficacy of a parol *exchange* of land, that each party should take immediate possession of the property exchanged.

3. That where two parties have *exchanged* lands, and one of them has gone into possession of his part, sold the same and reaped the fruits of his bargain, and in the mean time suffers the opposite party to take and have exclusive possession of what he gets by the same exchange, and to continue therein, claiming and using notoriously the property as his own, tilling it, improving it permanently, paying the taxes on it as they are annually levied, and exercising absolute dominion and control over it for a period of nineteen years and upwards, such a possession, accompanied by a full payment of the consideration stipulated in the original con-

[Moss v. Culver.]

tract of exchange, amounts to ownership, and may be maintained against the original owner, and his heirs and assigns, notwithstanding the Statute of Frauds.

5. That a direction by one who has exchanged the land occupied by his tenant, to said tenant himself, for other land belonging to the tenant, that the tenant should continue thereafter in possession of the land so exchanged to him, in pursuance of the contract of exchange, and no longer as tenant, if proved, afford evidence proper for the consideration of a jury, of a surrender of the original tenancy and an entry in pursuance of the parol contract of exchange, particularly if the occupancy thereafter was exclusive, continued and notorious, and was followed by an immediate change of the assessment of the land, the payment of the taxes, and the non-payment of rent to the original owner.

6. That if the jury believe from all the evidence in the case, that a parol contract for the exchange of lands was made between Benjamin Moss and Wesley Culver, in pursuance of which each went into possession of the land of the other, and that Benjamin Moss sold and conveyed the land received by him, thus rendering it impossible for him to place Wesley Culver in his original position, and that Culver held notorious, continued and exclusive possession of the land received by him, and exercised ownership over the same for a period of nineteen years and upwards, and that the land was assessed to, and the taxes paid by him, and that the parol contract of exchange had been so fully executed that it would be against equity to rescind the same, that such contract was not within the Statute of Frauds.

In his charge Judge Dana said :—

* * * "The questions of law connected with the case are not wholly free from difficulty, and are also raised by written points submitted by the counsel of the plaintiffs and defendants respectively and our instructions to you will be our answers to them.

"A parol exchange falls within the provisions of the statute we have just read, and the burden of proof is therefore upon the defendant setting up a parol title to the fee in the lands in controversy, and he is bound under the construction of the act by the court, clearly, distinctly, directly and not by inference, to show by credible and competent evidence, that the contract of exchange was made, the time when, its precise terms, the contents, quantity and boundaries or other sufficient designation or means of identifying the lots interchanged, so as to leave no uncertainty in respect to either ; whether the exchange was upon equal terms, or if an additional equivalent was to be given, to whom, its amount and the fact of its payment ; and that under and in pursuance of such agreement thus definitely and distinctly proven, exclusive possession was taken by each, of the lands he received under the

[Moss *v.* Culver.]

exchange, has continued to be openly held, improvements not susceptible of compensation in damages made, and that in fact the contract has been so far executed that it would be against equity to rescind it.

"The taking possession and its retention being open, visible and continuing acts, are uniformly declared by the courts to be indispensable requisites to take the case out of the operation of the statute. It is not essential that such taking possession be instant and immediate on the hour or day of the contract, but must be taken under and in pursuance of it and within such reasonable time as the situation of the premises and of the parties warrant, and as shall leave no doubt by length of interval or other circumstances that the possession is directly consequent upon and in pursuance and part performance of the contract. The defendant's 2d point, thus understood and qualified, is affirmed.

"It is made our duty to charge the jury, that it is incumbent on the defendant who sets up a title in derogation of the easy and certain statutory requisites for the assurance of lands, to leave upon your minds no reasonable doubt. It is not enough, as in ordinary civil actions, that the weight of evidence inclines in his favor; he must go farther, and leaving nothing in uncertainty, satisfy you that each of the requirements we have specified are met and answered. Neither is it sufficient that the case rests upon the unsupported testimony of a single witness, although the evidence of one competent and credible witness present at the agreement, corroborated by the clearly proven declarations and acts of the parties, may suffice. Declarations also from liability to the misapprehension and misstatements of witnesses, especially after the declarant is dead, are not the most reliable evidence, and require to be thoroughly scrutinized by the jury.

"Guided and governed by these general rules, do you find under the evidence that a contract of exchange was made as claimed by the defendant, and are its terms and extent thus fully defined and proved?

"If not, or if the agreement was that which is alleged by the plaintiffs, the defendant's case fails him, your inquiries need proceed no farther, and your verdict should be for the plaintiffs. [But having proved the contract of exchange, did Benjamin Moss, under and in pursuance of it, take exclusive possession of the 140 acre lot, exercise over it acts of ownership, sell and convey portions or the whole thereof, and thus place it out of the power of himself or of his heirs to reinstate the defendant in his former position? His taking possession, his exercise of ownership and sales are not denied by the plaintiffs; they claim, however, that those acts were not in pursuance of an exchange, but of a release and surrender of his equity by the defendant. Did the

[Moss *v.* Culver.]

defendant Culver in like manner take and thenceforward hold the exclusive, open, visible possession of the lands he was to receive under the exchange?

"In this connection we advert to the points, two in number, submitted, with his reasons attached, by the plaintiff's counsel.

"We decline to affirm either of these points, and refuse to charge that as matter of law the verdict must be for the plaintiff, or that the defendant has not proved such a parol sale or exchange as will except his case out of the statute. The points and reasons appended assume as facts what must, in our view, be submitted to the determination of the jury. The third reason for the 2d point assumes the plaintiff's theory of the result of the evidence, that the defendant was at the date of the exchange not merely a temporary and permissive occupant of the house, but was in possession of the 50-acre lot also. Should the jury, however, find under the evidence that up to and at the date of the alleged exchange, Culver was merely occupying the house, and assisting to work lands owned by him, as well the 50-acre lot as his other lands in the vicinity, and that under and pursuant to the exchange, took the exclusive possession of the piece now in dispute, had it assessed to him, paid the taxes thereon, and continued to occupy exclusively, and use and improve the same for a period of nineteen years, Moss having taken like possession, occupied and disposed of the 140-acre lot or a large portion thereof, the case would in our opinion be brought within the exceptions to the statute and the defendant may recover. The statute against frauds is to be so construed and enforced as not to be made either a pretext, an instrument or a defence of fraud. The defendant's 3d and 6th points are affirmed.

"We have already stated that a parol exchange is within the statute, and enumerated the proof requisite to take the case out of the same. We are also of the opinion that the courts have recognised a distinction between a parol sale and an exchange, when such exchange has been followed by a corresponding possession and subsequent sale of one of the tracts exchanged, whereby it was rendered impracticable to reinstate the before existing relations of the parties.

"In both the fact of possession taken is requisite, and the distinction relates chiefly to the kind and manner of proof, and the defendant's 1st point thus qualified is affirmed.

"In the nature of an exchange, which is effected and made up of the concurrent acts of both parties, it results that possession taken of one of the tracts under the circumstances of this case, if the defendant's evidence is believed, may be considered by you in weighing the evidence of possession by the other, and if Wesley Culver at the date of the exchange was in possession both of the house and of the 50-acre lot, the facts assumed in the defend-

[Moss *v.* Culver.]

ant's 5th point, if clearly found, are, in connection with the other facts of the case, relative to the possession by both Moss and Culver, evidence proper for the consideration of the jury of a surrender of the original tenancy and of a re-entry, in pursuance of the parol contract of exchange; and this point, thus understood, is also affirmed."

The verdict was for the defendant.

The plaintiffs took out a writ of error. They assigned for error the answers to the points of the respective parties and the portion of the charge in brackets.

*D. L. Rhone, C. E. Wright* and *D. C. Harrington,* for plaintiffs in error.—To make a parol sale sufficient the contract must be direct, positive, express and unambiguous. The terms must be clearly defined, and all the acts necessary for its validity, must have especial reference to it and nothing else; the land so described that there can be no mistake with regard to its identity; payment of the purchase-money, and possession taken in pursuance of the contract and such possession must be exclusive, with the boundaries of the land distinctly ascertained: Frye *v.* Shefler, 7 Barr 93; Greenlee *v.* Greenlee, 10 Harris 226. One tenant in common cannot purchase by parol of his co-tenant or a tenant purchase of his landlord, for being in possession, no visible change is possible: Eckert *v.* Eckert, 3 Penna. R. 332; Poorman *v.* Kilgore, 2 Casey 371; Workman *v.* Guthrie, 5 Id. 495; Hill *v.* Myres, 7 Wright 174. There is no difference between a parol sale and a parol exchange of lands: Big Mountain Improvements Co.'s Appeal, 4 P. F. Smith 370. In such cases as this, the judge acts as chancellor, and if the facts will not take the case out of the statute, he should so charge: Stafford *v.* Henry, 1 P. F. Smith 517; Startwell *v.* Wilcox, 8 Harris 117; Kidder *v.* Boom Co., 12 Id. 293.

The Reporter received no paper-book of the defendant in error.

The opinion of the court was delivered, May 5th 1870, by

AGNEW, J.—The first and second assignments of error do not conform to the rule requiring the points to be set out *in totidem verbis.* The 3d and 4th, however, embrace all the material questions in the cause. The contract for the exchange of farms between Benjamin Moss and Wesley Culver was sufficiently proved. The testimony of Joel R. Culver brought the parties face to face, not only in the fact that he was the authorized channel of communication between them, but by actual presence also. The agreement to exchange was direct, positive, express and unambiguous; its terms clearly defined, and the subjects of it identified. Wesley Culver was the equitable owner of a tract of 140 acres of

[Moss v. Culver.]

land bought of Benjamin Moss, on which he had paid all the purchase-money except a small sum. Benjamin Moss was the owner of a tract of 50 acres of land. Wesley Culver married a daughter of Moss, and went into the house on the 50 acres. For family reasons Moss desired to get back the 140 acres he had sold to Culver, and had been endeavoring to exchange the 50 acres for the 140 acres; but failed. He then sent Joel R. Culver to see his brother Wesley, and persuade him to exchange. Before Joel started he asked Moss how he wanted to trade, and what proposition he should make to Wesley. Moss said, I want you to go down and offer him that lot where he lives, even up, for the 140 acres, and tell him I will make him a general warranty deed for it, in lieu of that I was to make for the 140 acres. Upon these terms, the exchange was finally made, with the additional provision that Wesley should give Moss a sleigh in satisfaction of the balance of purchase-money unpaid on the 140 acres. Thus the terms of the exchange were clear and unambiguous. The subjects of it were equally well defined, the tracts being separate well known parcels of land, given each for the other, without the necessity of a survey, or other act to ascertain or identify them. The exchange was carried fully into execution, even to the tender of the warranty deed to Wesley Culver, but which he foolishly rejected on the ground that the terms 50 acres *strict* measure would not embrace (as he supposed) two or three acres additional contained in the tract. Benjamin Moss got back the tract of 140 acres, and has since held it and conveyed parts of it away. Wesley Culver has remained in the exclusive and undisturbed possession of the 50 acres for almost twenty years. The tract has been assessed to him, and taxes paid by him during all this time. The contract, as proved by Joel R. Culver, was strongly corroborated, and mutual performance fully proved by other witnesses. Under these circumstances the contract and the facts of the exchange were properly submitted by the court to the jury, and if believed were sufficient to take the case out of the Statute of Frauds and Perjuries. There was not such a conflict of evidence raised by the testimony of Lucy Wilkinson the daughter, and Daniel Moss, the son of Benjamin Moss, as justified a withdrawal of the case from the jury. Their statement as to a different arrangement about the 140 acres, and the permissive occupancy by Wesley of the 50 acres, was strongly contradicted by the act of Moss himself in making the deed to Wesley for the 50 acres. The church trial and the deed strongly repelled any idea of a tenancy. Nor are we convinced that there was not sufficient evidence of the change of the character of Wesley's posssession of the 50 acres at or immediately after the exchange. Indeed there was no satisfactory evidence of his tenancy of the tract or of the terms under which he held possession of it before the exchange. Joel R. Cul-

ver testifies that after Wesley's marriage to Moss's daughter, he went into possession of the *house* on the 50 acres—that Moss told him to move into the *house*. On the other side there was no proof of a specific tenancy. Daniel Moss said he knew that Wesley went on to the place—that they all worked together there that summer. Jonah De Long said all he knew was that Daniel Moss, Wesley, and his uncle (Benjamin Moss), worked together, and he thought they divided in some way or other. Certainly this is loose evidence of a tenancy of the entire tract by Wesley, and scarcely justifies the complaint, that the judge submitted a theory of his own without evidence, as to the tenancy being confined, possibly, to the house. Nor is there any force in the expressions— "the lot of land where he lives"—"the land he now lives on." They were simply descriptive of the tract exchanged, and not of the character or extent of Wesley's possession of it. But assuming that previous to the exchange Wesley had a permissive pos-. session.of the entire tract of the 50 acres, so as to constitute a tenancy at will, still the evidence of a change in the character of the possession was ample. It was exclusive on the part of Wesley for about twenty years, during which time the tract was assessed, and taxes paid by him. He paid no rent and none was demanded, and although the tract lay within a short distance of Moss's residence, the possession of Wesley was undisturbed. On the other hand there is no doubt of the exclusive possession and control by Moss of the 140 acres, and his conveyance of part of it.

It is true, as has been often said, there is no difference between a parol sale and an exchange in regard to the requisites to take it out of the Statute of Frauds and Perjuries. A clear, explicit and unambiguous contract, and a taking of possession under and in pursuance of the contract, are as much requisites of a parol exchange as of a sale. But there is a marked difference in the evidence which establishes the possession. A sale is confined to a subject coming from a single side. It has no relation to, or dependence on any other subject. The evidence of possession taken of it is therefore confined to the single subject, and if not taken in a reasonable time, or so as to make it doubtful whether it is attributable to the contract, the parol sale is not taken out of the statute. But an exchange necessarily has a subject on each side which stands related to the other. One is the representative of the other, so much so that the law implies a contract of warranty by the act of exchanging. If therefore the evidence shows a clear, unequivocal, and complete taking possession of one of the subjects of an exchange, by the party owning the other subject, it strengthens the evidence of a possession taken by the opposite party of the corresponding subject. Evidence of possession that might seem weak and inconclusive in the case of a parol sale, is thus made clear and convincing in the case

[Moss v. Culver.]

of an exchange. This is not new doctrine, but has received the sanction of this court in at least two decided cases : Miles v. Miles, 8 W. & S. 135 ; Reynolds v. Hewitt, 3 Casey 176. In the present case, if the change of the character of Wesley Culver's possession of the 50 acres, from that of tenant at will to that of owner, might be thought, when standing alone, in a slight degree doubtful, under the evidence, it is rendered perfectly clear by the evidence of Benjamin Moss's possession and absolute control of the 140 acres received in exchange for the former. Even in the case of parol sale or gift a prior tenancy is not an absolute bar to proof of a change in the character of the possession : Aurand v. Wilt, 9 Barr 54. In such a case it is said that an express surrender of the tenancy, and a resumption of the possession under the contract will suffice.

Upon the whole case we discover no error, and the judgment is therefore affirmed.