## Brown et al., Appellants, *v.* Bailey et al.

[Marked to be reported.]

*Statute of frauds—Parol exchange of lands—Evidence.*

A parol agreement for the exchange of lands established by clear, precise and indubitable evidence, and consummated by actual possession, is not within the statute of frauds.

If the evidence of an exchange of lands shows a clear, unequivocal and complete taking possession of one of the subjects of an exchange by the party owning the other subject, it strengthens the evidence of a possession taken by the opposite party of the corresponding subject. Evidence of possession that might seem weak and inconclusive in the case of a parol sale, is thus made clear and convincing in the case of an exchange.

*Exchange of lands—Specific performance—Jurisdiction.*

Where an exchange of lands was made in the lifetime of plaintiff's testator, and was fully consummated by an adverse and notorious possession continued by defendants to the time of decedent's death and afterwards, defendants have the right, in an action of ejectment, to set up the equitable defence that the contract was performed, and plaintiffs cannot deny their right to set up this defence on the ground that it was a case of specific performance of decedent's contract of which the orphans' court has exclusive jurisdiction.

*Evidence—Trespass—Dispossession—Deed.*

In the above case it was proper to exclude evidence that defendants deposited cinders upon the lot which they formerly owned and exchanged for the lot of plaintiff's decedent, as such an act tended to prove a trespass, and not a dispossession.

It was also proper to exclude a deed made by defendants four years subsequent to the exchange, granting a right of way to a railroad over the land, the grant being limited to the right " so far as same may pass over our land."

Argued Oct. 30, 1893.    Appeal, No. 192, Oct. T., 1893, by plaintiffs, Samuel S. Brown and Harry Brown, from judgment of C. P. No. 1, Allegheny Co., March T., 1890, No. 798, on verdict for defendants, James M. Bailey et al., trustees.    Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Ejectment.    Before COLLIER, J.

At the trial, there was evidence to the effect that, in 1874, William H. Brown, plaintiffs' predecessor in title, had a claim

against Graff, Bennett & Co. for $1,600 for iron sold to them. Graff, Bennett & Co., defendants' predecessor in title, had a claim against Brown for the use of certain river lots owned by them. Both parties owned different properties, some of which were situated on the river front and others back from it. Under these circumstances it was concluded by the parties that they could adjust their differences by an exchange of land. They accordingly made a verbal agreement by which Brown was to convey to Graff, Bennett & Co. the upper or river ends of his five lots, extending from Carson street to high water mark on the river, and Graff, Bennett & Co. were to convey to him in fee simple the river ends of their five lots extending from high to low water mark. Both parties immediately took possession of the lands to which they were entitled under the agreement. The heirs of Brown treated the landing as their property, and, in a partition of the property, it was allotted to one of the heirs, through whom plaintiffs claim. Defendants claim title by conveyances from Graff, Bennett & Co.

After plaintiffs gave evidence of their title through William H. Brown, defendants, under objection and exception, gave evidence of the exchange by Wm. H. Brown and Graff, Bennett & Co. [1]

Plaintiff in rebuttal offered to show that defendants and their predecessors in title deposited cinder, slag, ashes, etc., upon the land, and committed waste upon the property by tearing down houses, etc. Rejected. [2, 4, 9–12]

Plaintiffs asked defendants to state whether they defended on the ground that they were entitled to have specific performance of the alleged parol agreement or upon the ground of possession. The Court: We cannot compel defendants to comply with the request. [3]

Defendant's abstract of title, given in evidence, contained the following:

" 3. That William H. Brown was the owner of lots Nos. 1, 2, 3, 4 and 9, in the plan of lots laid out by the executors of Samuel Black of the subdivision of Coal Hill Manor lots, running from Carson street to the low water mark of the Monongahela river; that Graff, Bennett & Co., a partnership composed of John Graff, James I. Bennett, Robert W. Marshall and William B. English, were the owners of lots Nos. 5, 6, 7, 8 and

10.  That in and by an agreement entered into between the owners of these lots respectively, William H. Brown of the one part, and Graff, Bennett & Co. of the other part, the Carson street ends of the lots owned by William H. Brown, described in the præcipe and writ, were transferred, set over, and delivered to Graff, Bennett & Co., and Graff, Bennett & Co. entered into possession of the ground described in the præcipe and writ, and William H. Brown & Co. entered into possession of the river ends of the lots Nos. 5, 6, 7, 8 and 10.  This agreement was made about seventeen years ago ; some time in the year 1874 ; since which time the possession has been in Graff, Bennett & Co., their grantee and assigns."

Plaintiffs offered a deed by Graff, Bennett & Co., in 1878, to the Pittsburgh & Lake Erie Railroad for a right of way over the premises in dispute "so far as the same may pass over our lands."  Rejected.  [5–8]

Plaintiffs also offered to prove that prior to the bringing of this suit, at least six months before this suit was brought, plaintiffs vacated and gave up all possession which they might previously have had of the property which, according to defendants' testimony, Wm. H. Brown was to have received from Graff, Bennett & Co., and notified the present defendants, who were then in possession of the land now sued for, after having vacated this possession, and told them that they might go and take possession, and made a demand upon them for the land now in controversy.  The purpose is to show that we gave up possession before bringing suit, and notified defendants to give us possession of their land.  Objected to.

Objection sustained.  By the Court : We think this evidence is incompetent and irrelevant because the plaintiffs could not rescind the contract alleged to be made in that way.  [13]

Plaintiff's points were in part as follows :

1.  Request for binding instruction.  Refused.  [14]

" 2.  That under the evidence the defendants have not shown such equities as would entitle them to enforce the specific performance of the alleged parol contract between Graff, Bennett & Co. and William H. Brown, and the verdict must be for the plaintiffs."  Refused.  [15]

" 6.  That so far as the defence goes to the enforcement, or seeks the specific performance by plaintiffs of the alleged parol

contract between Wm. H. Brown, deceased, and Graff, Bennett & Co., for exchange of land, this court has no jurisdiction to sustain and enforce the same, and the verdict of the jury must be for the plaintiffs." Refused. [18]

"11. That inasmuch as by the testimony of defendants' witness, Col. Schoonmaker, the understanding and agreement between the parties in making the alleged parol contract was that Graff, Bennett & Co. were to have the deeds prepared for execution and delivery, conveying to the respective parties, in fee simple, the lands which each party was to get by said contract, the said agreement for the preparation of deeds became a constituent part of the alleged parol contract; and said Graff, Bennett & Co. never having had such deeds prepared and having offered no reason for such default, the alleged contract became thereby inoperative and not binding upon either party, and, on these facts, the verdict of the jury should be for plaintiffs." Refused. [16]

"12. Defendants cannot set up the alleged parol contract and enforce the specific performance thereof by verdict and judgment thereon by the court as a chancellor, without having shown the tender on their part of a deed to W. H. Brown or his successor in title for the premises and the rights and privileges he was to obtain." Refused. [17]

Binding instructions were given for defendant. [19]

*Errors assigned* were (1–13) rulings on evidence; (14–19) instructions; quoting bills of exceptions and instructions.

*H. Burgwin, G. C. Burgwin* with him, for appellants.—When an agreement for transfer of land is averred in pleading, it is presumed to have been in writing: Slingerland v. Slingerland, 46 Minn. 100.

Since the act of 1834 an ejectment in a case like this (to enforce a parol contract of decedent for sale of land) cannot be sustained. The remedy is in the orphans' court exclusively: Myers v. Black, 17 Pa. 193; Porter v. Dougherty, 25 Pa. 405; Callen v. Ferguson, 29 Pa. 247; Cobb v. Burns, 61 Pa. 278; White v. Patterson, 139 Pa. 429; McFarson's Ap., 11 Pa. 503.

A defendant setting up a parol contract to defeat an ejectment on the legal title comes under the same rule as if he were

plaintiff seeking to enforce specific performance: Moore v. Small, 19 Pa. 461; Rankin v. Simpson, 19 Pa. 471; Winpenny v. Winpenny, 92 Pa. 440; Hart v. Carroll, 85 Pa. 508; Postlethwait v. Frease, 31 Pa. 472; Jamison v. Dimock, 95 Pa. 52.

When a party setting up a parol contract asks the court to save him from the consequences of his own disregard of the law, he should be held rigidly to full, complete, satisfactory and indubitable proof: Woods v. Farmare, 10 Watts, 195; Moore v. Small, 19 Pa. 461; Hill v. Meyers, 43 Pa. 170; Hart v. Carroll, 85 Pa. 510; Hess v. Callender, 120 Pa. 138; Lord's Ap., 195 Pa. 451.

The evidence as to the contract and exclusive possession afterwards ought to be clear, precise and indubitable: Reynolds v. Hewett, 27 Pa. 176; Van Horn v. Munnell, 145 Pa. 497; Bowers v. Bowers, 95 Pa. 477; Reno v. Moss, 120 Pa. 49.

A possession prior to the parol agreement will not avail: Bowers v. Bowers, 95 Pa. 481; Hill v. Meyers, 43 Pa. 173; Greenlee v. Greenlee, 22 Pa. 225.

There must be at least the publicity which attends the open transfer of possession, the land to be held by fixed boundaries: Haslet v. Haslet, 6 Watts, 464; Bowers v. Bowers, 95 Pa. 481.

In an exchange, possession must be established as to both parties: Moss v. Culver, 64 Pa. 414; Mitchell, Real Est., 397.

There must be proof of improvements not reimbursed by profits derived from occupation of the land and not capable of compensation in damages: Hart v. Carroll, 85 Pa. 510; Lord's Ap., 105 Pa. 459; Moyer's Ap., 105 Pa. 436; Dougan v. Blocker, 24 Pa. 28; Miller v. Zuball, 113 Pa. 323.

Even where possession taken and purchase money paid in full are held to be sufficient, the insolvency of the vendor seems an important element: Jamison v. Dimock, 95 Pa. 56; Lord's Ap., 105 Pa. 451; Dougan v. Blocker, 24 Pa. 28; Moyer's Ap., 105 Pa. 432; Eckert v. Mace, 3 P. & W. 364.

When it is said that no laches will be imputed to a vendee in possession, it is implied that he owes no duty to the vendor, has paid the purchase money, or at least tendered a conveyance when necessary as in an exchange of lands: Vincent v. Huff, 4 S. & R. 298; Richards v. Elwell, 48 Pa. 361; White v. Patterson, 139 Pa. 435; Porter v. Dougherty, 25 Pa. 405; Callen v. Ferguson, 29 Pa. 247; Colson v. Thompson, 2 Wheat. 336;

Morgan v. Morgan, 2 Wheat. 290; Greenlee v. Greenlee, 22 Pa. 225.

Had defendants relied upon their possession, we had abundant authorities to show that the tenancy at will, which they acquired by taking possession under the contract, was terminated: (1) By death of W. H. Brown; (2) by assignment of Graff, Bennett & Co.; (3) by waste in pulling down houses; (4) by disavowal of Brown's title, claiming title in fee against him; and thereupon becoming tenants at sufferance, not entitled to notice before ejectment brought: Willison v. Watkins, 3 Pet. 43; Willard v. Earley, 22 W. N. 122; Newman v. Rutter, 8 Watts, 54; Howard v. Merriam, 5 Cush. 563.

*James H. Reed* and *D. F. Patterson, P. C. Knox* with them, for appellees.—The evidence of a contract was sufficient: Moss v. Culver, 64 Pa. 414; Johnston v. Johnston, 6 Watts, 370; Boyertown Nat. Bank v. Hartman, 147 Pa. 562.

Where land was sold by parol, price paid, possession delivered, assessment for taxation changed, taxes paid and control held by purchaser for a number of years, the possessor is not to be held, in ejectment against him by the holder of the legal title, to the same strictness of proof of the contract required in the case of a recent bargain; the rule must be relaxed after the lapse of time: Richards v. Elwell, 48 Pa. 361; Sower's Admrs. v. Weaver, 84 Pa. 268; Allison v. Burns, 107 Pa. 54.

In Myers v. Black, 17 Pa. 193, and Porter v. Dougherty, 25 Pa. 405, the plaintiffs were claiming under contracts with decedents whose heirs were in possession. The party here is in possession and an attempt is made by the representatives of the decedent to oust him by an action of ejectment.

In Moss v. Culver, 64 Pa. 414, an action of ejectment was prosecuted by the heirs of one of the parties to the parol agreement of exchange, and the defence of such parol agreement was sustained. So in the case of Lewis v. Baker, 151 Pa. 529, the defence was sustained in an action of ejectment. So in Winpenny v. Winpenny, 92 Pa. 440, where ejectment was brought by the representative of the decedent, and the defendant was allowed to set up the parol agreement under which he was in possession. And in Hess v. Calender, 120 Pa. 138, the defence of a parol agreement was passed upon in an ejectment brought by the representative of a decedent.

Having paid the entire consideration by the exchange, the question of improvements is of no importance: Miller v. Zufall, 113 Pa. 323; Bowers v. Bowers, 95 Pa. 477; Jamison v. Dimock, 95 Pa. 52.

Laches will not be imputed to one in peaceable possession of land for delay in resorting to a court of equity to establish his right to the legal title. The possession is notice to all of the possessor's equitable rights, and he need only assert them when he may find occasion to do so: White v. Patterson, 139 Pa. 438; Harris v. Harris, 70 Pa. 175; Richards v. Elwell, 48 Pa. 361; Lewis v. Baker, 151 Pa. 529.

*H. Burgwin*, *G. C. Burgwin* with him, for appellants, in reply.—Moss v. Culver, 64 Pa. 414, was originally brought by Moss, the plaintiff, who subsequently died. Of course the court, having acquired jurisdiction, retained it.

Lewis v. Baker, 151 Pa. 529, was not a case of defence under parol contract. That question had been settled in a former equity suit between the same parties, and the question then arose, was that adjudication a bar to subsequent action.

Winpenny v. Winpenny, 92 Pa. 440, simply decided that a judgment in favor of defendant setting up a parol contract of purchase was a bar to a subsequent ejectment by same plaintiff.

In Hess v. Calendar, 120 Pa. 138, the court below held the testimony not sufficient, and that was the only point raised and decided in the Supreme Court.

But in Callen v. Ferguson, 29 Pa. 247, where the defendant, as in the present case, set up a parol contract of sale, in defence to an ejectment on legal title, the question was raised and the court said: " The defendant occupies the position of plaintiff seeking specific performance by bill in equity." He should have sought specific performance in the orphans' court: Porter v. Dougherty, 25 Pa. 405.

White v. Patterson, 139 Pa. 438, was the case of a written contract. Purchase money paid in full and possession held for thirty-three years.

Harris v. Harris, 70 Pa. 175, was not a case where defence was made under parol contract, and it simply decided that, where a plaintiff had formerly been defeated when setting up a parol contract of purchase, the fact did not bar his claim for damages for breach of the parol contract by defendant.

In Richards v. Elwell, 48 Pa. 361, it was held that after forty years of peaceable possession under fixed boundaries, purchase money fully paid, also taxes, the stringency of proof as to terms of parol contract was relaxed, and laches not imputed because vendee owed vendor no duty, had paid full price, etc.

A party who claims (under parol contract) has the burden of proof thrown on him. He knows that the law required written evidence of such contracts in order to their validity. He has acted with great negligence and folly who has paid his money without getting his deed: Purcell v. Miner, 4 Wall. U. S. 513.

OPINION BY MR. JUSTICE THOMPSON, December 30, 1893 :

The parties through whom the appellants and appellees claim title had in 1874 distinctive claims against each other, one for the use of property for boating purposes and the other for iron sold, and at that time owned different properties, some of which were situated on the river front and others back from it.  By their exchange it was concluded they could be best utilized. Accordingly they entered into a parol contract to adjust their differences and to exchange their respective properties.  Brown, one of these parties, was to take the river front lots, and for them to exchange the back lots; and Graff, Bennett & Co., the other party, was to take the back lots, and for them to exchange the river front lots.  This agreement was executed and consummated by the delivery of possession of the lots as agreed, but no deeds were executed and delivered.  This was done in 1874, and since then Brown continued in possession of the river front property, using it in connection with his landing for boats up to the date of his death.  Since then by partition it has been allotted to one of his heirs.  Graff, Bennett & Co. have since the exchange been in possession of the back lots, collected the rents of the small buildings upon them ; have filled up the low ground of them, and have paid taxes and assessments for municipal purposes against them.

Notwithstanding the criticism based upon some minor differences between the testimony of Colonel Schoonmaker and that of Mr. Graff, the evidence of the parol agreement for exchange was clear, precise and indubitable, and thus clearly established, consummated by proofs of actual possession, it was not within the statute of frauds and perjuries.

In Moss v. Culver, 64 Pa. 414, it is said by Mr. Justice AG-NEW: "It is true, as has been often said, there is no difference between a parol sale and an exchange in regard to the requisites to take it out of the statute of frauds and perjuries. A clear, explicit and unambiguous contract, and a taking of possession under and in pursuance of the contract, are as much requisites of a parol exchange as of a sale. But there is a marked difference in the evidence which establishes the possession. A sale is confined to a subject coming from a single side. It has no relation to, or dependence on, any other subject. The evidence of possession taken of it is therefore confined to the single subject, and if not taken in a reasonable time, or so as to make it doubtful whether it is attributable to the contract, the parol sale is not taken out of the statute. But an exchange necessarily has a subject on each side which stands related to the other. One is the representative of the other, so much so that the law implies a contract of warranty by the act of exchanging. If therefore the evidence shows a clear, unequivocal and complete taking possession of one of the subjects of an exchange by the party owning the other subject, it strengthens the evidence of a possession taken by the opposite party of the corresponding subject. Evidence of possession that might seem weak and inconclusive in the case of a parol sale, is thus made clear and convincing in the case of an exchange."

In Johnston v. Johnston, 6 Watts, 370, it is said by Mr. Justice ROGERS: "It is undoubtedly true that an agreement for the exchange of land is within the statute of frauds and must be in writing: Rice v. Peet, 15 John. 503; Price v. Pell, Co. Lit. 447. But the specific execution of a parol agreement for an exchange will be decreed in equity when the agreement has been carried into effect in whole or in part. Although I do not find this point expressly adjudicated, yet it comes within the spirit of decisions which have been made in this state."

In Reynolds v. Hewett, 27 Pa. 176, it was held that "where there is a parol exchange of lands there must be a delivery of possession, but the evidence in reference to the time of possession will admit of greater latitude than in the case of a parol sale of land."

Since 1874 until the present suit, brought in 1890, no question has been raised in regard to the agreement and no attempt

has been made to effect its rescission.   Taxes have been paid, the ground improved by filling in, it may be at no great cost, and municipal improvements have been paid.   Under these circumstances the appellants, in attempting to defeat the parol agreement, do not present themselves with any equity that would command consideration.   It is said in Sower's Admr. v. Weaver, 84 Pa. 268, by Mr. Justice GORDON: "Equity is loth to undo a gift or contract at the instance of one who has neglected to move for its rescission, until the passing years have grafted new equities upon the transaction, until the donee has grown old and has spent the vigor of his age and the prime of his manhood in the use and improvement of a property long regarded as his own."

But it is earnestly argued that the defence goes to the enforcement of the agreement and seeks for specific performance, and that as Brown is dead the court below had no jurisdiction, the orphans' court alone having exclusive jurisdiction.   The appellants brought this ejectment for the possession of these lots against appellees, the vendees of the assignee of Graff, Bennett & Co., and when they make a defence to it, based upon parol exchange followed by possession in pursuance of it, contend that it must fail because it amounts to a claim for specific performance of which the court had no jurisdiction.   As the parol agreement is clearly established, and as possession was delivered in pursuance of it, and as Graff, Bennett & Co. and their vendees continued in notorious and exclusive possession, and paid taxes and municipal claims, the appellees had no reason or occasion to resort to the orphans' court, because the agreement was in fact performed.

This action was brought to recover possession of the premises from appellees, alleged to be unlawfully withheld by them from appellants, and the court in which it was brought had jurisdiction to inquire into the circumstances under which such possession was obtained.   But if appellees were out of possession, as in Myers v. Black, 17 Pa. 193, and Porter v. Dougherty, 25 Pa. 405, and were seeking to recover possession by the enforcement of a contract made with a decedent, as the act of 1834 gives the orphans' court full power to make and enforce decrees for specific performance in actions where the vendors are dead, the jurisdiction of the court of common pleas

in such cases would doubtless fail.  Such jurisdiction by rea-
son of the act in question attaches to the orphans' court in
order to complete its jurisdiction over decedents' estates, but
in this case the exchange was in the lifetime of the decedent
and was fully consummated by an adverse and notorious pos-
session continued by Graff, Bennett & Co. and the appellees
down to the present time, so that upon the death of Mr. Brown
the property did not belong to him or become any part of his
estate.   The proofs establish clearly and indubitably an equi-
table title in the appellees, and, if so, they had a right to make
the defence and the court below the jurisdiction to determine it.

In Lewis v. Baker, 151 Pa. 533, it is said by Mr. Justice
WILLIAMS : " When the chancellor remitted them to a court
of law he meant necessarily that upon the facts disclosed by
them they must wait till their possession was attacked, if it
ever should be, and then set up all the facts by way of an equi-
table defence to such action.   This they have done.   After
twenty years of exclusive and peaceable possession, their right
to an equal undivided one half is at the last moment challenged
by their brother in an action of ejectment.   They are now in a
court of law where the decree in equity sent them.   They have
a right to set up any facts that make it inequitable for their
brother to assert his legal title against them."

In Winpenny v. Winpenny, 92 Pa. 442, in holding a first
ejectment conclusive, Mr. Justice GORDON said : " By the
present plaintiffs, against the same defendant and for the same
property, an action of ejectment was instituted, in the year
1869, in the former district court, which resulted in a verdict
and judgment for the defendant.   In that suit, Joseph Win-
penny claimed, as he does in the present one, the premises in
dispute, under and by virtue of a parol contract with his father,
John Winpenny.   The substance of the terms of that contract
was as follows : The father owed the son some five hundred
dollars, and in payment thereof agreed to sell and make him,
the son, a deed for the property in controversy.   Joseph ac-
cepted this proposition, went into possession, and has continued
that possession ever since, but he never received the promised
deed.   On trial of the present suit, the defendant put in evi-
dence the record of the former case, together with the evidence,
substantially as above stated, upon which it was tried.   There-
upon the court below directed a verdict for the defendant, on

the ground that the former judgment, having been rendered for Joseph Winpenny upon an equitable title, was conclusive and a bar to a second suit." Again he says : " The equitable character of the contract being thus established, it only remains to consider whether a single action of ejectment is conclusive of the rights of the parties. If, however, the establishment of the legal title, and its enforcement by the action of ejectment, must, under our system, be effected by what is equivalent to a decree determining the invalidity of the equity, this is not an open question. In such case the only inquiry would be, has Joseph the right to set up his equitable title as a defence ? If he has such right, upon that title a court must pass, as would a court of chancery, and its judgment must be equivalent to a decree. We need not add that such a decree by a chancellor would be final and conclusive."

As the appellees were defending the right to their possession of the property, their equitable defence was properly within the jurisdiction of the court in which appellants had brought their action. The defence established by the proofs was a complete bar to their right to oust them of possession, and if so was clearly within the jurisdiction of the court. In one breath, appellants, by their ejectment, put them upon a defence and deny their right to make it, alleging want of jurisdiction. The jurisdiction of the orphans' court conferred by the act in question, however exclusive it may be for certain purposes, cannot thus be successfully invoked to defeat an equitable defence and oust a possession which equity would protect.

The exclusion of the proofs in regard to the dumping of cinders by Graff, Bennett & Co. upon the river front lot was proper, because they substantially offered to prove a trespass and not a dispossession, and the rejection of the deed by which Graff, Bennett & Co., four years subsequent to the exchange, granted to the Pittsburgh & Lake Erie Railroad Company a right of way was also proper, because the grant was limited to the right " so far as same may pass over our lands," and would have been nugatory after the exchange became perfected. The assignments in regard to the offers of proofs in regard to those subjects are not sustained. The appellants' abstract of title filed having furnished the information required, the third assignment of error is not sustained.

Judgment affirmed.