Kirk et al. *v.* Ford et ux., Appellants.

Argued May 18, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

R. Paul Lessy, for appellants.

J. DeHaven Ledward, for appellees.

OPINION BY MR. JUSTICE MAXEY, June 17, 1938:

This is an action in ejectment for possession of a dwelling in Chester, Pennsylvania. Appellees (plaintiffs below) rely upon their record title against appellants' claim based on an alleged parol exchange of lands, followed by their admitted possession of the premises over a number of years. The court below ruled that the evidence of the alleged oral agreement for exchange was insufficient to avoid the operation of the Statute of Frauds, and that appellees' title must prevail. After trial, the jury found a verdict in defendants' favor, but the court entered judgment for plaintiffs non obstante veredicto. This appeal followed.

The principles which control this case have been frequently defined and applied by the courts of this state. The requisites of proof to avoid the operation of the Statute of Frauds are the same in both a parol sale and a parol exchange: *Moss v. Culver*, 64 Pa. 414, 424; *Johnston v. Johnston*, 6 Watts 370; *Brown et al. v. Bailey et al.*, 159 Pa. 121, 28 A. 245; *Jermyn v. McClure*, 195 Pa. 245, 45 A. 938. To overcome a record title, a claimant relying upon an oral agreement of sale

or exchange must present evidence of the same that is "direct, positive, express and unambiguous," expressly defining all the terms and conditions of the contract and leaving nothing to guesswork or subject to misinterpretation. If the evidence submitted fails to meet these requirements, the Statute strikes down the alleged bargain as inoperative, turning it into a mere lease or estate at will: Act of March 21, 1772, 1 Sm. L. 389, sec. 1, (33 PS sec. 1); *Glass et al. v. Tremellen*, 294 Pa. 436, 144 A. 413; *Hart v. Carroll*, 85 Pa. 508; *Sample v. Horlacher et al.*, 177 Pa. 247, 35 A. 615; *Wright v. Nulton*, 219 Pa. 253, 68 A. 707; *Sorber v. Masters et al.*, 264 Pa. 582, 107 A. 892; *Breniman v. Breniman et al.*, 281 Pa. 304, 126 A. 751. Moreover, these cases establish that evidence of loose declarations by deceased parties will be accorded little weight in adjudicating a matter of such paramount importance as the title to land. As stated in *Ackerman v. Fisher*, 57 Pa. 457, 459, and repeated in *Glass et al. v. Tremellen*, supra, 294 Pa. at page 438: ". . . the contracting parties must be brought together face to face. The witnesses must have heard the bargain when it was made, or must have heard the parties repeat it in each other's presence. A contract is not to be inferred from the declarations of one of the parties." When the present record is read in the light of the foregoing principles, the conclusion is inescapable that appellants failed to sustain their claim and were not entitled to the benefit of the verdict they received at the hands of the jury.

The title of appellees, plaintiffs below, is as trustees of Alfred C. Rhoads, who died on July 10, 1933, leaving a will whereby he devised the residue of his property, including his real estate, to appellees in trust to use the income thereof for the maintenance of his widow, his children to participate equally therein after the charge on the estate for the widow's benefit and to take in remainder after her. In his will testator, without specifically referring to any parcel of real estate, mentioned

the indebtedness due from one son and expressly acknowledged settlement of and remitted all other debts due him from his other children. It is apparent that his intention was that all his children should receive an equal interest in his estate. At his death the record title to the disputed property, a dwelling located at 623 E. Thirteenth Street, Chester, was in testator's name, but these premises were then, and had been for many years, occupied by appellants, a daughter and son-in-law, as their residence. Appellants refused to surrender the property on the executors' demand; hence this suit was begun to compel them to vacate.

The history of the relationship between appellants and the testator supplies the basis of the former's claim. In 1920 testator conveyed to appellants, on the express consideration of one dollar, premises known as 712 Potter Street, Chester, subject to a mortgage of $1,800. There appellants resided until 1927. Early in that year testator, according to testimony as to statements made by him at the time, desiring to afford his daughter, one of appellants, a more agreeable neighborhood in which to reside, purchased a lot on 13th Street and constructed two houses, one of which was 623 E. Thirteenth Street. When the house was completed, in October, 1927, appellants moved in and have since occupied the premises as their home. From this time until his death the unencumbered title to this property was at all times in the testator. After appellants vacated the Potter Street home, testator managed that property, collected the rents and paid the taxes. On June 2, 1933, appellants at testator's request executed and delivered a deed to him of the Potter Street property, subject to the existing mortgage, but did not request or obtain a deed to the Thirteenth Street home, where they then lived. The next day testator made his will, dated June 3, 1933, and a month later he died.

Appellants' defense to the suit is that the transaction with respect to the Potter Street property was part of

an oral agreement between themselves and testator whereby they were to receive title to the Thirteenth Street dwelling in exchange for the Potter Street home; that by executing the deed to the latter on June 2, 1933, the bargain was fully performed on their part and hence does not offend the Statute of Frauds; and that as a consequence they are now entitled to retain possession of the former, and to an adjudication that they hold title to the same.

Appellants were themselves incompetent to testify to the terms of this alleged transaction. The evidence in their behalf consisted wholly of the testimonial recollections of eight witnesses as to statements and declarations which, they say, were made by testator over a period beginning before the Thirteenth Street home was built and extending almost to the time of testator's death. These declarations, according to the witnesses, were all made by the testator and none were made by appellants, and they were all of an inconclusive nature. They were, in general effect, that in casual conversations with the witnesses, testator at one time or another, either before the Thirteenth Street house was built or after it was occupied by appellants, stated to the witnesses that he proposed to build a house in a more congenial neighborhood which his daughter might occupy, and that he was either going to make or had made an exchange of the new Thirteenth Street house for the Potter Street home. In no instance were the words used by testator apt language to signify that a definite agreement had been entered into. On only one occasion, referred to in the next paragraph, did these conversations occur in the presence of both of the appellants.

The testimony of Doris Ford was the most favorable to appellants' contention. She was their daughter and was twenty-two years of age at the time of the trial and fifteen years of age in 1927 when the agreement of exchange is alleged to have been made. Even this young woman's testimony does not fill the measure of proof

required in a case like this. She said that in 1926, a year before the Thirteenth Street house was built, when she was about fourteen years of age, she overheard her grandfather, the testator, ask her mother, one of the appellants, if the latter would care to live on Thirteenth Street, and on receiving an affirmative reply, say if he could purchase the land he would build a house there. Her testimony reads as follows: "Q. How did you know about the exchange? A. I heard Mother and Dad and Grandfather talking about it. Q. What did he say? A. They were going to exchange our 712 Potter for the one he was building on 623 East Thirteenth Street. Q. When was that said, Doris? A. Quite a few times before he started to build the house and after he built the house and after we occupied the house it was talked over."

All the other witnesses reported their conversations with testator as having occurred in the absence of both appellants, except in the case of the witness Whaley, testator's tenant in the house adjoining the disputed property, who said that on one occasion, when both testator and the appellant husband were present, while discussing the purchase of that property by the witness, testator said he had exchanged one house for the other.

Doris Ford's testimony was "the sum and substance" of defendants' proof as to the terms of the alleged exchange. The title to real property cannot be judicially transferred on testimony as to what the owner said he was "going to" do with it or had done with it. The evidence offered contained nothing as to the terms of the agreement contended for. One of the witnesses stated that testator informed him he was to get $1,000 for the exchange. All the others agreed that the bargain was an exchange on even terms. Appellants, seeking to show a consideration, proved an assignment by appellants to the testator of certain shares of building and loan association stock having a cancellation value of $310.50. Apparently the dues accruing thereafter on

this stock were paid by the testator out of rents received from the Potter Street property, and after his death his estate received as the withdrawal value the sum of $973.40. The evidence failed to clarify what, if any, monetary or other consideration was paid or assigned, or what was agreed upon by the parties.

One thing, however, is clear, and that is that testator by the dispositions of his will attempted to equalize the shares of his children in his estate. By making his will the day after appellants reconveyed the Potter Street property to him, without giving them a deed to the Thirteenth Street dwelling, an inference arises that he intended to retain the latter as part of his estate. This is strengthened when it is considered that the Potter Street dwelling, the equity in which over and above the existing encumbrance was only about $1,700 in 1927, is alleged to have been exchanged for the Thirteenth Street house, then unencumbered and valued at $6,500. There is no warrant for concluding that in making such an exchange, the testator could have believed that he was creating an equality of distribution among his children. Such an equality he later took pains to provide for in his will.

Mr. Justice AGNEW, speaking for this court in *Moss v. Culver*, 64 Pa. 414, 424, said: "It is true . . . there is no difference between a parol sale and an exchange in regard to the requisites to take it out of the Statute of Frauds and Perjuries. A clear, explicit and unambiguous contract, and a taking of possession under and in pursuance of the contract, are as much requisites of a parol exchange as of a sale. But there is a marked difference in the evidence which establishes the possession. A sale is confined to a subject coming from a single side. It has no relation to, or dependence on any other subject. The evidence of possession taken of it is therefore confined to the single subject, and if not taken in a reasonable time, or so as to make it doubtful whether it is attributable to the contract, the parol sale is not taken

out of the statute. But an exchange necessarily has a subject on each side which stands related to the other. One is the representative of the other, so much so that the law implies a contract of warranty by the act of exchanging. If therefore the evidence shows a clear, unequivocal, and complete taking possession of one of the subjects of an exchange, by the party owning the other subject, it strengthens the evidence of a possession taken by the opposite party of the corresponding subject. Evidence of possession that might seem weak and inconclusive in the case of a parol sale, is thus made clear and convincing in the case of an exchange."

But in the instant case all of the declarations made by the testator did not necessarily mean anything further than the existence of a desire on his part to make easier his daughter's circumstances of living. If an exchange of property was intended by him, it may have been only an exchange of *occupancy* that testator contemplated. Appellants made no declarations of any kind. They were pleased to accept the testator's bounty, whatever its extent or limits. Nothing is better settled than the doctrine that casual declarations expressed to others by a parent of ownership of real estate being in a child are of slight legal significance in determining questions of title. As this court stated in *Ackerman v. Fisher,* supra, 57 Pa. 457, 459: "Nothing is more common than that a father speaks of a farm, upon which he has placed a son, as the son's farm, or a house in which he permits the son to live, as the son's house. It is every day's occurrence that a father speaks of having given a lot of ground to a son, when it is plain there was no intention to transfer the ownership. And such language is not confined to parol gifts. When a father says, I sold such a piece of real estate to my son, he generally means no more than that he agreed that the son might have it for a consideration. He does not necessarily mean that his own dominion over it has ceased, and that a sale has been executed. Were courts to look at the language of

parents, expressed to others, as evidences of title in children, it would annihilate domestic confidence, and it would doubtless, in most cases, be giving an effect to loose declarations that was never intended." In *Poorman v. Kilgore*, 26 Pa. 365, 372, it was said: "The very nature of the relation [between parent and child], therefore, requires the contracts between parents and children to be proved by a kind of evidence that is very different from that which may be sufficient between strangers." See also *Breniman v. Breniman et al., Exrs.*, supra; *Glass et al. v. Tremellen*, supra; *Dill v. Westbrook*, 226 Pa. 217, 75 A. 252, and *Hartzell's Estate*, 114 Pa. Superior Ct. 190, 173 A. 842.

If any presumption arose by reason of appellants' occupancy of the Thirteenth Street property, it was, as these cases decide, that appellants were merely tenants in subordination to the testator's title in fee. We find nothing in the record before us to overcome the force of this presumption, and the evidence failed to supply the requisite proof of a parol exchange or gift.

The judgment is affirmed.