## ESTATE OF DANIEL HEFFNER, DECEASED.

APPEAL BY F. D. HEFFNER FROM THE ORPHANS' COURT OF BERKS COUNTY.

Argued March 5, 1890—Decided May 5, 1890.

[To be reported.]

(a) The only evidence tending to support a claim presented by a widow against her husband's estate, for money belonging to her and received by him, was his declaration that she had given him money, without saying how much, and that if she did not stop scolding he would give it back to her, and she could do as she pleased with it:

1. This declaration, being vague and indefinite, failing to show the receipt of any specified amount, and being equally consistent with the allegation of a gift to the husband of some portion of the wife's money as with that of a loan, was insufficient to justify a decree by the Orphans' Court in favor of the claimant.

2. All the evidence having been adduced by cross-examination of the party contesting the claim, the court had no right to infer facts supporting it, from the failure of the witness to make his testimony more definite, or the failure of his counsel to have him do so, as such a course would put the burden of proof on the wrong party.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 309 January Term 1890, Sup. Ct.; court below, number and term not shown.

On June 3, 1889, the final account of Franklin D. Heffner, one of the administrators of the estate of Daniel Heffner, deceased, exhibiting a balance for distribution, was called for audit in the court below before SCHWARTZ, P. J., who subsequently filed an adjudication in part as follows:

Adjudication.

The decedent died intestate about the 1st day of August, 1884, and left to survive him a widow, Lucy Heffner, and issue, one son, Franklin D. Heffner. James H. Marx, Esq., presented claim of Lucy Heffner against the estate for $1,000. The claimant is the decedent's widow. In support of her claim she shows that she had a separate estate from her father of $1,500. Of this sum she received $500 in 1878, and thereafter annually a further sum of $100, and during the lifetime of her husband, prior to August, 1884, she had received $1,000. Franklin D. Heffner, the only son, and contestant of the claim, was called adversely by his mother. His testimony was to the effect that his father had informed him that his mother had given him money, and added that he, witness, did not know how much. After further questioning, he admitted that his father had admitted she had given him her money and that now she always scolded about it, and that unless she discontinued her scolding, he would return it to her to do with it as she pleased.

The witness was an unwilling one, testifying against his own interest, and concluded most of his answers, " but I don't know how much he received." His testimony created the impression upon me that he endeavored to be as indefinite as he could. There is no question but that the claimant had this $1,000, and that she received it in the presence of her husband, who, together with the claimant, always gave their joint vouchers for the receipt of the same. The payer of this money always left it between them upon the table, and never saw either of them take possession of the several sums paid. He informing his son that he had it, and she scolding about it, must surely tell the true story. Beyond all question, he possessed it, and she was dissatisfied, either because he took charge of it, or because he would not give her any evidence of indebtedness for it. Taking the evidence of Mr. Winks, who paid the money to them, and that of the son, all doubts are removed. He got the money, else he would not have complained and admitted the receipt thereof to his son, nor would his wife have scolded about something which had no existence.

The contention on the part of the son is, however, that the claim is too indefinite, that no amount has been shown to be in his hands; that no time had been fixed when the conversation

Adjudication.

was had between father and son, and that it was not shown what moneys the wife had when said conversation was had. It is true the conversations are not fixed as to time. If the witness had been anxious to have the exact time when such .intercourse took place, he might and should have stated it. As it was, he made his testimony as vague as possible. He testified against his will and against his interest. The court has no definite information when they or any of them were had. It takes it, however, that if they had not occurred during the latter years of deceased, this interested witness, and if not, surely his counsel, knew enough to fix the time during the early years of said yearly payments. His counsel, instead of fixing a time when either of said conversations took place, objected to his testimony, and strongly contended that he was an incompetent witness to prove the conversations. Of his competency there can be no doubt.

It was also further contended that whatever money, if any, the decedent had out of her separate estate, she had given him .as a gift. The act of 1848 made this money her separate estate. The same having gone into his possession, the presumption of law is that he held it as trustee for her: Hamill's App., 88 Pa. 363. It is not claimed that it was a loan; can it under the evidence submitted, have been a gift? It was strenuously argued that the word given, was used by the father, when he informed his son that she had given it to him as a present or gift. Such interpretation cannot be fairly inferred therefrom. The word "given" is equally applicable to a trust, and may be used in loaning. He had the money, and until a gift of it is proven he had it in trust. I find that under all the facts it cannot have been less than $900, and allow her her claim to that extent.

—The testimony taken before the auditing judge showed that the joint receipts mentioned in the adjudication were given to Jacob N. Wink, who testified that they were written by John Kemp, under whose advice the witness insisted on having the signatures of both Heffner and his wife to the receipts.

The testimony given upon cross-examination by the accountant, referred to in the adjudication, was, in full, as follows:

· I know that my mother inherited money from her father at .different times. I was by when they received money, and they

Arguments.

put it away; but whether she gave it to my father, that I don't know.

Q. Your father told you that your mother had given him $1,000?

Objected to as incompetent and irrelevant.

A. My father did tell me that she had given him money, but did not say how much. He said that she had given him money, but did not say how much; and that she was always scolding; and if she did not stop scolding he would give it back, and she could do with it what she pleased. He said she had given him her money, and if she did not behave herself he would give it back to her; she could do as she pleased with it. He said that she had given him her money, but how much I don't know. After decedent's death, mother gave me $125 to buy a horse.

The adjudication having become absolute without exceptions filed thereto, F. D. Heffner took this appeal, specifying that the court erred:

1. In awarding the widow $900, as money held in trust for her by the decedent.

2. In awarding to the widow, as a creditor of the estate, the sum of $900.

*Mr. D. E. Schroeder*, for the appellant:

1. The action of the claimant in not giving notice of her claim before the son was called upon to testify, certainly does away with any reason to suspect an intention on his part to evade the giving of his full knowledge of the facts. An examination of his testimony will show that the finding that he was an unwilling witness is unjust. The objection to his testifying was good in law, on the principle decided in Johnston v. Johnston, 31 Pa. 450, that a subsequent promise by the husband to repay money received by him as his wife's, is void for want of consideration: and see Hinds' Est., 5 Wh. 138. There is no evidence of an acknowledgment by the husband so clear, precise, consistent, full and satisfactory, as to establish an indebtedness to the wife: Gray's Est., 1 Pa. 329. The utmost that the declarations of the decedent show is that his wife had made a gift to him of money, the amount of which was not as-

certained. It was the claimant's business to make out her case. There is no evidence that the decedent got the money paid by Wink. The reason for his joining in the receipts is explained by Wink's testimony.

2. Before the act of April 11, 1848, P. L. 536, a husband, reducing his wife's choses in action to possession, had a right to them unless there was a special contract to the contrary between himself and the wife; and the evidence to establish an indebtedness to her must be clear, and, when consisting of the husband's declarations, they must be deliberate, precise and consistent: Gray's Est., 1 Pa. 327; Wesco's App., 52 Pa. 195. While, since the act of 1848, a husband receiving his wife's choses, money, etc., is held to possess them as a trustee for her, unless it be shown that he received them as a gift or loan, we contend that it is only when he receives the wife's money from a source other than herself that he is to be treated as a trustee; and when he receives it from her, by her own act, it will be presumed to be a gift, unless she proves by clear, positive and precise evidence that the transaction was a loan: Hause v. Gilger, 52 Pa. 412; Hinney v. Phillips, 50 Pa. 382; Gleghorne v. Gleghorne, 118 Pa. 383. Evidence to establish a parol trust must be clear and positive: Emerick v. Emerick, 3 Phila. 94; Capehart v. Capehart, 2 Phila. 134; Raybold v. Raybold, 20 Pa. 308. Such was the case in Hamill's App., 88 Pa. 363.

*Mr. J. H. Marx*, for the appellee:

1. The appeal should be dismissed because the appellant has disregarded a rule of the court below providing that "any parties excepting to" an adjudication "must file their exceptions with the clerk. . . . . within twenty days." He has filed no exceptions at all. The Orphans' Courts have power to make a rule of practice, such as the one in question, and it will be recognized and enforced on an appeal to this court: Irwin's App., 5 Wh. 577. A decree of the Orphans' Court will not be reversed save upon exceptions taken in the court below: Hise's Est., 5 W. 157; Mylin's Est., 7 W. 64; Dyott's Est., 2 W. & S. 564. The Supreme Court is confined to a revision of the question decided in the court below: Simmonds' Est., 19 Pa. 439. It will exercise the discretionary power conferred upon it by § 4, act of April 14, 1835, P. L. 276,* only when

---

* See § 2, act of June 16, 1836, P. L. 683.

it is apparent that injustice has been done the appellant : Hise's
Est., supra; Dyott's Est., supra.

2. The date of the conversation with his father, which the
accountant testified to, was manifestly understood by the wit-
ness and his counsel, as well as by the court, to be subsequent
to the receipt of the last payment from Jacob Wink, and no
attempt was made to fix an earlier date for it.   Taking the
receipts given to Wink, and the testimony of the accountant,
we have adequate elements of clear proof, the claimant receiv-
ing $1,000, and the decedent stating that she had given him
her money: Hamill's App., 88 Pa. 363.   Indeed, the proof is
much stronger in this case than that in Hamill's Appeal.   As
to the word "given," contained in the testimony, it must be
remembered that the examination was conducted in Pennsyl-
vania Dutch and the word used by the witness was "gever,"
which is more comprehensive than "given," although so trans-
lated by the clerk, and is equally applicable to a loan, gift or
trust.

3. If a husband receive the moneys or goods of his wife, the
law, since the act of April 11, 1848, P. L. 536, presumes that
he received them as her trustee or agent, and if title is claimed
by him or by any one through him, a gift or purchase must be
proved: Gicker v. Martin, 50 Pa. 138; Johnston v. Johnston,
31 Pa. 450; Hamill's App., 88 Pa. 363; Grabill v. Moyer, 45
Pa. 530.   It is contended that the inference in this case is that
there was a gift.   But if there was, why should the wife be
always scolding about the money and the decedent threaten to
give it back to her?   There can be no other conclusion than
that the scolding was about her money, or something that the
husband had promised and neglected to do in relation to it.
The question is not whether the evidence warrants a different
conclusion from that reached by the court, but whether the
conclusion of the court is warranted by it; as this court will
reverse a finding of fact only when flagrant error is manifest :
Bull's App., 24 Pa. 286.

OPINION, MR. JUSTICE WILLIAMS :

Daniel Heffner died intestate on the 1st day of August, 1884.
Letters of administration upon his estate were issued to Frank-
lin D. Heffner, his son.   The final account of the administrator

Opinion of the Court.

came before the Orphans' Court of Berks county for adjudication on the 3d day of September, 1889. On the hearing, a claim was presented for the first time by the widow of the decedent and mother of the accountant for $1,000, which she alleged was money belonging to her separate estate, in the hands of her husband for her use when he died. The evidence offered in support of this claim consisted of certain receipts signed by both Mr. and Mrs. Heffner, and the testimony of the accountant. The receipts, and the reason for the name of Heffner appearing on them, were explained by the person to whom they were originally given. He said he had money to pay to Mrs. Heffner, and he was advised to require a receipt signed by herself and her husband before paying over the money, and that he accordingly insisted on their joining in the receipt. When this was done he took the receipt, and left the money upon the table, and went away. He did not know who took charge of it.

The receipts, therefore, as explained, did not show that the money went into the hands of Daniel Heffner. The testimony of the accountant related to the declarations of his father made to him in regard to the money of the claimant. He said: "My father did tell me that she had given him money, but did not say how much." He also said that his father told him: "If she did not stop scolding, he would give it back to her, and she could do as she pleased with it." These are all the declarations shown by the accountant, and all the evidence on which the decree of the court below can rest. The declarations are vague, indefinite, and equally consistent with the allegation of a gift of some portion of her money to her husband as with that of a loan. Whether a gift or a loan, the amount is not fixed, nor is there anything in the testimony by which it can be ascertained. The declarations do not throw light upon the exact point of controversy or of complaint on the part of the wife. What was the subject of her scolding when her husband grew impatient, and said to his son: "If she did not stop scolding he would give it back to her, and she could do as she pleased with it?" Had she loaned him money, and was she demanding a note or bond as security for it? Then the most natural way to appease her would have been to give the note or bond demanded. Had she given him money or intrusted

Opinion of the Court.

money to his care that she now wanted to take back into her own hands? Then the direct route to peace lay in the line which her husband's words indicated when he said he would "give it back to her, and let her do as she pleased with it." There was in this no acknowledgment of a debt, no recognition of an obligation to pay, but rather the expression of a purpose to permit his wife to have her own way, and do as she pleased with her money.

The learned judge of the Orphans' Court found, however, from this evidence, that Daniel Heffner had at the time of his death $900 of his wife's money in his hands, for which his estate was liable to her. In the opinion, the court said: "The court has no definite information when they or any of them (the talks between the witness and his father) were had. It takes it, however, that if they had not occurred during the latter years of deceased, the interested witness, and if not surely his counsel, knew enough to fix the time during the early years of said yearly payments." The court found, therefore, that the conversations between the witness and his father "occurred during the latter years of deceased," and after money enough had been paid on the joint receipts of his wife and himself to make up the sum found due from him. This finding the learned judge admits does not rest on the testimony, but on his estimate of the intelligence of the accountant and his counsel, and the kind of defence which, in his opinion, persons of such intelligence would be likely to make if they had it in their power to do so. In the absence of the necessary proof on the part of the claimant, the learned judge set up a presumption, based upon the intelligence of the accountant and his counsel, and allowed this presumption to supply the defect in the claimant's case. The reasoning seems to be substantially this: "The claimant alleges a loan of one thousand dollars out of her own money to her husband, and demands it out of his estate. The proof is indefinite and insufficient. It does not show how much of her money came into his hands, or when, or whether it was received as a gift or a loan; but if he did not have at least nine hundred dollars, and did not receive it as a loan, the known intelligence of his administrator and the attorney for the estate would enable them to establish a negative." Because they did not establish a negative, the

learned judge inferred or presumed the affirmative, and accordingly made the decree.

The trouble with this method is that it puts the burden of proof on the wrong shoulders. The general rule undoubtedly is that a defendant may wait, before breaking silence, until a case has been made out against him that will justify a verdict or decree; but, under the doctrine applied in this case, such waiting may supply the want of a case against him, and be the ground of the decree. This, it seems, would be the case, at all events, where the court entertained a good opinion of the intelligence of the party and his counsel. We can hardly agree to this method of proof. This claim may be a meritorious one, but it seems never to have been presented to the administrator. More than five years after her husband's death, after her own second marriage, and in the Orphans' Court on final distribution, it comes first to the notice of the parties interested in the estate. When, in addition to these circumstances, it is remembered that the administrator is the son of the claimant, living in the same neighborhood, and that they were necessarily brought frequently into contact with each other during the course of administration, in which the rights of the widow under the intestate laws had been fully protected, we see no reason for relaxing the rules of evidence in her favor, if we had the power to do so, or for putting a penalty upon the intelligence of the administrator and his counsel.

The decree is reversed, and a procedendo awarded.