**Haftman Estate**

*Melvin B. Bassi* and *Manderino & Manderino,* for accountant.

*William C. Porter,* for claimant.

MARINO, P. J., April 2, 1962.—This is the claim of Henry G. Haftman, a son of testator, for reimbursement for sums expended by him for funeral expenses and cost of tombstone for decedent.

The claim in its entirety is opposed by Mrs. Delores Cherocki, the accountant, a daughter of decedent, as well as by all the other children. It is the contention of accountant and the other children that claimant was the beneficiary of certain life insurance policies on decedent's life, and that it was decedent's intention that the proceeds of such policies should be applied in payment of his burial expenses.

Testimony relating to the claim was submitted at a hearing thereon. From the testimony so adduced and other competent evidence in the case, the court finds that Henry G. Haftman did pay the sum of $1183.73 to John B. Greenlee Funeral Home, covering the cost of decedent's burial expenses, and that he also paid the sum of $415 to James Quinet for cost of a tombstone for decedent's grave, making a total expenditure of $1598.73; also, that said Henry G. Haftman did receive the sum of $350 from the United Mine Workers Welfare Fund and the sum of $255 from the Social

Security Administration, toward expenses of decedent's funeral, or a total credit of $605.

Claimant was the designated beneficiary of a life insurance policy on decedent's life in the Metropolitan Life Insurance Company for $530 and a similar policy in the Constitution Life Insurance Company for $1,000. He collected the full proceeds of both policies. The beneficiary on said policies was originally the wife of decedent but she had died more than a year previously, and decedent shortly thereafter designated his eldest son, claimant herein, as beneficiary.

The objectors advance several contentions to bolster their view that it was decedent's expressed desire that the proceeds of the policies should be applied in payment of his burial expenses. They rely largely upon loose declarations purportedly made by claimant to the effect that he intended to use said proceeds to pay decedent's funeral expenses and the cost of a monument. Reference will be made to such declarations as have any true significance in connection with the separate subject headings under which the conceptions of objectors will be discussed.

### Equitable Election

Accountant maintains that the facts here presented require that the equitable doctrine of election should operate. Mr. Bispham in his Principles of Equity, sec. 295, p. 497, 10th ed., defines this doctrine thus: It is ". . . a choice which a party is compelled to make between the acceptance of a benefit under a written instrument, and the retention of some property already his own, which is attempted to be disposed of, in favor of a third party, by virtue of the same paper." This principle of election was cited with approval in Vassilakis v. Vassilakis, 371 Pa. 268, 273.

In Sharar's Estate, 136 Pa. Superior Ct. 478, 484, the equitable principle of election was applied, the court stating, page 484:

"If appellant insists on retaining the proceeds of the policy she should be required to make compensation to appellee from the assets of the estate, and she can receive no benefit under the will until appellee has realized an amount equal to the proceeds of the policy from the assets of testator's estate."

In Tompkins v. Merriman, 155 Pa. 440, 446, it is stated:

"The doctrine that one who accepts a benefit under a will is estopped from asserting a claim *repugnant to its provisions* is founded on equitable considerations, and has been recognized and applied in this state in many cases, beginning with Stump and Others v. Findlay and Others, 2 Rawle, 168; and extending to Zimmerman v. Lebo, 151 Pa. 345, and Cumming's Appeal, 153 Pa. 397." (Italics supplied.) See also Forsythe's Estate, 81 Pa. Superior Ct. 347, 349; Cox v. Rogers, 77 Pa. 160; Cooley v. Houston, 229 Pa. 495; Hickman's Estate, 308 Pa. 230, 235.

It will be observed that in the foregoing cases, claimant was asserting a right or privilege contrary to the provisions of the will, or repugnant to it. In the Vassilakis case, testator directed that his "life insurance money" be divided between two persons, one of whom was the designated insurance beneficiary, who collected the insurance proceeds and refused to account for same. In the Sharar case, the will provided that the proceeds of the life insurance policy "must be used to pay all funeral expenses", thus evincing a clear intent on the part of testator to consider the insurance proceeds a part of his estate. In Tompkins v. Merriman, supra, the court refused to apply the doctrine for exactly the same reason, the will not showing the intention of testator to treat the disputed property as his own and dispose of it as a part of his testamentary scheme.

Where is the repugnancy in the case at bar? None can be cited. Nowhere in the will do we find any allusion to the insurance proceeds. Nowhere do we find directions for payment of burial expenses from same. The will is completely silent on the matter of funeral expenses and makes no provision whatsoever for payment of such. It follows that they are payable from the general assets of the estate. It is evident, therefore, that this case is not one in which the doctrine of equitable election can be successfully invoked.

### Promissory Estoppel

Accountant alternatively maintains that claimant cannot succeed because, in consideration of all the facts and circumstances of the case, he should be estopped from making any claim on account of the application of the doctrine of promissory estoppel. The principle is well established in the law. The terminology now employed to describe it, to wit, promissory estoppel, is of rather recent origin, but the principle itself goes back more than 200 years. See Kellogg, J., dissenting opinion, Allegheny College v. National Chautauqua County Bank, 246 N. Y. 369, 381. It is now formulated in the Restatement of the Law of Contracts, §90, as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

In Fried v. Fisher, 328 Pa. 497, 501, where the principle was invoked, Mr. Justice Stern said:

"In recent years there has been adopted the phrase 'promissory estoppel,' and this nomenclature is well chosen as indicating that the basis of the doctrine is not so much one of contract, with a substitute for con-

sideration, as an application of the general principle of estoppel to certain situations."

However promissory estoppel has been characterized as a "species of consideration" by the eminent authority, Learned Hand, J., in Porter v. Commissioner of Internal Revenue, 60 F. 2d 673, 675; and as a "substitute for consideration or an exception to its ordinary requirements" by the equally famous Cardozo, C. J., in Allegheny College v. National Chautauqua County Bank, supra.

In Pennsylvania, the doctrine has been applied under various forms. A frequent application has been to cases in which a person announces his intention of abandoning an existing right, or of performing some act or duty not imposed by law, thereby inducing another, relying thereon, to some action or forbearance. Such cases have often been referred to as exceptions to the general rule that, in order to give rise to an estoppel, a representation must relate to an existing fact and not be merely an expression of opinions or a promise of performance at some future time.

The doctrine may be employed only in those cases where all the elements of a true estoppel are present, for if it is loosely applied, any promise, regardless of the complete absence of consideration, would be enforceable. It is for the court to decide whether alleged remarks and declarations are susceptible of the inferences attributed to them: General Electric Company v. N. K. Ovalle, Inc., 335 Pa. 439, 445. In order that declarations should give rise to an estoppel, they must be clear and reasonably certain in their intendment. For these reasons, the doctrine has been encompassed by safe-guarding features to prevent a loose application of the principle, that the promise be one likely to induce action, that such action be of a definite and substantial character, and that the circumstances be such that injustice can be avoided only by the enforcement

of the promise: Fried v. Fisher, supra. Thus, an estoppel will not arise simply from the breach of a promise as to future conduct. There must be present the fact that the promisee relied upon the promise to his prejudice, and that substantial injustice would result unless the promise is enforced: Stelmack v. Glen Alden Coal Company, 339 Pa. 410, 415.

In the instant case, the record is barren of any evidence that claimant's gratuitous promise induced accountant or any other party to act in any manner prejudicial to her or their interests; there is no evidence of a forbearance of a substantial and definite nature; nor is there any evidence that any unjust loss could be avoided exclusively by the enforcement of the alleged promise. It was the duty of the accountant to pay the funeral and burial expenses from the assets of the estate. No loss is suffered if reimbursement of a member of the family who paid same is directed.

The loose, vague declarations purportedly made by claimant are not sufficient in quantity or quality to predicate firm reliance upon. Accountant alleges that he told her, "Don't worry, I told Dad he doesn't have anything to worry about, that I'll see that money is used properly," and "I even promised Dad if anything should happen to him that he can't pay the premiums, that I will be more than glad to pay them." Another sister, Mrs. Lillian Eibel, states he told her, in arranging the funeral, "Well, Daddy has $1,500 in insurance and certainly that should be enough to cover the cost of it," and "That's what he left it for". Claimant denied that he made the statements.

No action was taken by accountant or the other children in reliance upon claimant's promise which resulted in any disadvantage to them. They did not alter their position adversely or substantially. They have suffered no injustice in being deprived of a gratuitous benefit to which they have no legal or equitable right.

This court is satisfied that there is nothing in the present record to bring this case within any exception to the long settled principle of contract law, that a promise unsupported by consideration is *nudum pactum* and unenforceable. The doctrine of promissory estoppel is not applicable.

### Parol Trust

Lastly, accountant urges that if all else fails, the court is fully justified in decreeing a parol trust under the equitable principle involved. Let us consider such a trust as might be applicable.

Oral trusts are viewed with disfavor by the law, and the proponent of such a trust is under a heavy burden of proving the same by evidence which is direct, positive, express and unambiguous. See Gray v. Leibert, 357 Pa. 130, 53 A. 2d 132; Gates v. Gates, 158 Pa. Superior Ct. 273, 44 A. 2d 773.

It is in order to distinguish between resulting and constructive trusts.

"An express trust is created only if the settlor manifests an intention to create it, although the manifestation may be made by conduct as well as by words. A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property. In other words, an express trust is created if it appears that there was an affirmative intention to create it; whereas in the case of a resulting trust the circumstances indicate the absence of an intention to give the beneficial interest to the person in whom the legal title to the property is vested": 4 Scott on Trusts, §404.1, p. 2922 (2nd Ed.).

"On the other hand, a constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that

he would be unjustly enriched if he were permitted to retain it. . . . A constructive trust is not based upon the intention of the parties but is imposed in order to prevent one of them from being unjustly enriched at the expense of the other": 4 Scott on Trusts, §462.1, page 3104 (2nd Ed.).

Accountant must necessarily rely on the theory of a constructive trust, as there is no intimation of fraud in the case, or any evidence that claimant obtained property with the use of funds not his own, with the intention to reconvey or transfer same to the equitable owner.

A trust in personal property may be established by parol evidence: Williams Estates, 349 Pa. 568, 570; Gribbel v. Gribbel, 341 Pa. 11, 13. A constructive trust will be erected where a legacy is induced by the legatee's promise to hold it for the benefit of another: Hollis v. Hollis, 254 Pa. 90; Blick v. Cockins, 234 Pa. 261. The burden of proving that the real beneficiary of an insurance policy is other than the person named therein rests on the one who asserts it, and the evidence required to establish it must be clear, precise and indubitable: Lawrence v. Godfrey, 296 Pa. 474. The phrase "clear, precise and indubitable" has a technical legal meaning. As stated in Broida v. Travelers Insurance Company, 316 Pa. 444, 448:

"That meaning is that the witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable the jury [or court] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."

The existence of a trust depends solely on the intention manifested by the settlor, and the conduct of the transferee in treating certain property as being subject to a trust is not evidence of the settlor's intention, and

cannot impress a trust upon it, if in fact there was no trust: Bair v. Snyder County State Bank, 314 Pa. 85, 89; Pollock's Estate, 306 Pa. 301, 313. The burden of establishing the existence of a trust is upon him who asserts it, and this burden cannot be met by pointing to the failure of a defendant to disprove the existence of the trust: Heffner's Estate, 134 Pa. 436, 444.

A careful review of the testimony makes it evident that accountant has failed completely to meet the burden which is hers under the law to prove her contention. On the present state of the record, the court is obliged to conclude that the proceeds of both insurance policies belong to Henry G. Haftman, individually and absolutely. The court finds that payment by him of decedent's funeral expenses and cost of monument entitle him to reimbursement for same, to the extent hereinafter specified, out of the assets of decedent's estate. He has not received any payment on account of such reimbursement to date.

A member of the family of a decedent may properly make funeral arrangements upon consultation with the personal representative, or if there is no objection on the part of the personal representative it is presumed that he assented thereto and the estate is liable for reimbursement *in reasonable amounts:* France's Estate, 75 Pa. 220. But where a member of the decedent's family makes no effort to consult with the personal representative in making the funeral arrangements or in selecting a tombstone or grave marker, he accepts the responsibility as to the reasonableness of said expenditures. In the case at bar, claimant admits that he did not know what type of monument or marker decedent desired. As to the funeral arrangements, he consulted with one daughter of decedent, Lillian Eibel, but not with the executrix. Mrs. Eibel asked him, "Is there enough money in order for us to purchase such an expensive casket?", and he assured her that decedent

had $1,500 in insurance money coming, and that was sufficient to cover all costs.

As a matter of fact, the record shows that even though decedent left no debts or obligations of any kind, there will be little remaining for distribution to the seven children of decedent, all of whom share equally in the residue. There was only one pecuniary legacy of $1,000 to another son, and although the will is silent, there was testimony that said son had advanced such amount to his father in connection with a property transaction. The family car was bequeathed to another son, and there was testimony that it was titled in the name of decedent for purposes of convenience only, but actually was the son's property. So that after payment of the usual administration expenses, excluding reimbursement for cost of funeral and monument, there would remain for distribution the sum of $1,863.09. If reimbursement in full were made to claimant, there would remain less than $870 for distribution to the seven children of decedent.

It is recognized that the estate of a decedent is primarily liable for burial and funeral expenses (Volkwein v. Volkwein, 146 Pa. Superior Ct. 265), but the charges must be reasonable in amount and not disproportionate to the size of the estate. If they do not bear a sensible ratio to the size of the estate and decedent's station in life, only such amount as is reasonable will be allowed by the court: O'Hara Estate, 118 Pa. Superior Ct. 558. Availing ourselves of this yardstick, we find that decedent was a disabled, retired coal miner. His gross estate, after delivery of a 1956 model automobile to a son who claimed ownership, amounted to $3,185.99. In the light of these facts and circumstances, we are to determine whether charges totalling $1,598.73 bear a fair and just ratio to decedent's station in life, and the size of his estate. The court cannot condone the action of claimant in expending such sums for funeral expen-

ses and tombstone in an estate of this size. We will not order reimbursement of the full amount in the peculiar circumstances of this case. The court finds that under all the circumstances a reasonable allowance for complete funeral and burial expenses in this case is the sum of $950 and that the cost of a monument, or tombstone, for decedent should be limited to the sum of $150. The total approved expenditures being $1,100 and claimant already having received payments from indicated sources in the sum of $605, he is entitled to be reimbursed from estate assets in the sum of $495. The accountant is ordered to make payment in said sum and credit is allowed accordingly.